## Baltimore & Ohio Southwestern Railroad Company v. Commonwealth, By et al.

(Decided November 8, 1917.)

Appeal from Jefferson Circuit Court (Chancery Branch, First Division).

1. Taxation—Franchise Tax—Definition of.—The franchise tax mentioned in section 4077 of the Kentucky Statutes is a tax on the intangible property of a corporation estimated by ascertaining the value of its capital stock and then deducting therefrom the value of its tangible property, the remainder being the amount subject to a franchise tax; and the state has the right to subject this intangible property to the same tax as other like property.

2. Taxation—Franchise Tax—Interstate Carrier Subject to.—Where a foreign railroad corporation comes into this state over the lines of another road, and does business herein, it is subject to the payment of a franchise tax to the same extent as it would be if it came into the state over its own line and did business herein.

3. Taxation—Franchise Tax—Circumstances That Subject Carrier to. —Where a common carrier does business in this state and owns tangible property located in this state, it is subject to the pay-

ment of a franchise tax, although it may not own any tracks upon which its trains run in this state.

4. Taxation—Amount of Franchise Tax Due by Foreign Railroad Company—How Ascertained.—The franchise tax due by a foreign corporation operating a railroad in this state should be estimated on a mileage basis.

5. Taxation—Franchise Tax—Construction of Statutes.—Section 4080 of the Kentucky Statutes is applicable to corporations other than carriers that may be subjected to the payment of a franchise tax.

6. Taxation—Capital Stock of Corporation Subject to Franchise Tax —How Value of Ascertained.—The value of the capital stock of corporations subject to a franchise tax should be ascertained by taking into consideration the net and gross earnings, mileage and value thereof, and such other facts as may be necessary to determine the value.

7. Taxation—Reports to State Officers by a Corporation for Purposes of Taxation—Requirements of.—A corporation required to make a report should make a full, itemized and truthful report, and if it fails to make such a report, it will not be heard to say that property charged to have been omitted was not, in fact, omitted. No presumption will be indulged in favor of the corporation, but it will be presumed that the board in making the assessment confined itself strictly to the items reported by the corporation.

8. Taxation—Rolling Stock of Foreign Railroad Company.—The rolling stock of a foreign railroad company running its trains into this state is subject to taxation in this state, and the value of the rolling stock so subject should be fixed by estimating the value of the rolling stock that may be said to be permanently employed in this state.

9. Statutes—Contemporaneous Construction—When Will Not Exempt from Taxation.—Mere non-action upon the part of the officers of the state in assessing property or seeking to collect taxes thereon, will not be treated as such contemporaneous construction as will exempt the taxpayer from the payment of taxes sought to be collected by more vigilant officers.

10. Penalties—Revenue Agents.—Revenue agents are entitled to statutory penalties upon taxes recovered by them in a suit to assess omitted property, although the state officers charged with the assessment of this property were derelict in their duty.

WM. W. CRAWFORD for appellant.

A. SCOTT BULLITT, County Attorney; J. L. SULLIVAN, Assistant County Attorney, and MATT J. HOLT for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Reversing.

This suit was brought in the name of the Commonwealth by a revenue agent to have assessed as omitted property for the years 1905 to 1913, inclusive, the in--

tangible property, commonly called the franchise, and the tangible property consisting of office furniture and rolling stock of the Baltimore & Ohio Southwestern R. R. Co.

Upon hearing the case the lower court fixed the value of the omitted tangible personal property, consisting of office furniture, at $700, and the value of the omitted rolling stock at $85,583, or a total of $86,283, for each of the years mentioned, and the value of the intangible property omitted for these years as follows: 1905, $393,566; 1906, $415,573; 1907, $406,592; 1908, $464,950; 1909, $423,174; 1910, $344,465; 1911, $469,010; 1912, $460,430; 1913, $475,717. The value of this intangible property as will hereafter appear was ascertained by the court by capitalizing at 6% the gross earnings received by the Louisville offices of the company and then deducting from the amount so found the assessed value of the real property of the company in this state reported by the company to the assessing authorities, and the value fixed by the court on the omitted tangible personal property, consisting of rolling stock and office furniture. There was no dispute as to the value of the office furniture and the record does not disclose the method adopted by the lower court in arriving at the value of the rolling stock.

The facts of the case, about which there is really no substantial dispute, may be stated as follows: The Baltimore & Ohio Southwestern R. R. Co. is a foreign corporation organized under the laws of the states of Ohio, Indiana and Illinois. It has 926 miles of main line in other states but no main line or tracks in this state. About 130 miles of this main line is between Cincinnati, O., and New Albany, Ind., and about 300 miles between St. Louis, Mo., and New Albany, Ind., the remainder of it extending in other directions from different places. Its trains come into Louisville and Kentucky from New Albany, Ind., across the Ohio River over the tracks of the Kentucky & Indiana Terminal Ry. Co., a Kentucky corporation, and the distance its trains run over the tracks of this terminal company, all of which are in Kentucky, is a little over three miles. It maintains freight and passenger depots in the city of Louisville, Kentucky, into which its trains run, and owns in the city about a mile of sidetrack adjacent to its freight depots. It carries passengers and freight from and to its Louisville depots to and from all points on its lines of road outside of this state,

as well as to all points on lines of its connecting carriers outside of this state.

It does no intrastate business in Kentucky.     Every passenger that it carries on its trains in Kentucky is either a passenger going out of or coming into this state; and so all its passengers carried in Kentucky are interstate passengers.     Likewise all the freight that it carries on its trains in Kentucky is carried in interstate commerce.     It has no trains running between points in Kentucky, and no cars or engines, either passenger or freight, permanently located in Kentucky, although as stated its passengers and freight cars and passenger and freight engines come into Kentucky to its depots in Kentucky over the tracks of the terminal railway company.     It does, however, solicit passengers and business in different parts of Kentucky to be carried out of the state, and operates five regular passenger trains in and out of Louisville daily, as well as two freight trains into Louisville and two freight trains out of Louisville daily.

The gross receipts received by its Louisville passenger and freight agents during the years 1904 to 1912, inclusive, averaged approximately $835,000 each year, while its total gross receipts received by all its agents averaged for each of these years approximately $12,557,000; its gross earnings from business in Kentucky being approximately $37,000, and its net earnings $12,000.     It filed each year with the State Auditor of Public Accounts partial reports required by section 4096 of the Kentucky Statutes, but these reports showed only its track mileage in Kentucky and the estimated value thereof, and the value of certain real property which was owned by it, and located in the state, but it did not report any rolling stock or office furniture, nor did it in any of these years make any report to the State Auditor concerning its intangible property, as required by sections 4078-4081 of the Kentucky statutes.

On the facts as we have set them out the lower court, as we have seen, fixed at quite a large sum each year the value of the "franchise" of the company assessable in this state, and its counsel contends that it was error to assess any sum against it on account of this "franchise" or intangible property tax, because, as it is argued, it was engaged wholly in interstate business and therefore the imposition of a tax other than on its property permanently located in this state would be a tax on interstate

commerce, which is prohibited by the provisions of the constitution of the United States.

Authority for the imposition of what is called a franchise tax is found in section 4077 of the Kentucky Statutes reading: "Every railway company or corporation . . . . shall, in addition to the other taxes imposed on it by law, annually pay a tax on its franchise to the state, and a local tax thereon to the county, incorporated city, town or taxing district, where its franchise may be exercised . . . ."

In sections 4078-4081, inclusive, to be later noticed in detail, provision is made for reports by corporations subject to this tax, and general rules are laid down by which the value of the franchise may be determined from the information furnished in these reports.

It will be observed that the statute describes the tax mentioned in section 4077 as a tax on the franchise of the corporation, but the word "franchise" in this section and in other connected sections of the statute, is not used in its strict or technical sense. The Legislature did not undertake by these statutory provisions to tax the right of either domestic or foreign corporations to engage in business in this state or to levy a tribute upon the right of foreign corporations to engage in interstate commerce in this state.

In the case of Henderson Bridge Co. v. Commonwealth, 99 Ky. 623, this court considered for the first time the nature of the franchise tax provided for by these sections, and in the course of the opinion said that the value of the franchise subject to tax was to be found by ascertaining the value of all the property, real and personal, tangible and intangible, having a taxable situs in this state and which made up the value of its capital stock and then deducting from the value of the capital stock so found the assessed value of the tangible property located in this state, leaving the balance as property subject to the franchise tax. In other words, the court treated the word "franchise" as synonymous with the words "intangible property" and determined that it was the intangible property of the corporation which was represented by the difference between the value of its capital stock and the assessed value of its tangible property that was subject to this so-called franchise tax. This case was taken by appeal to the Supreme Court of the United States, and in Henderson Bridge Co. v. Commonwealth of Kentucky, 166

U. S. 150, 41 L. Ed. 953, the court, in speaking of this tax, said: "The tax in controversy was nothing more than a tax on the intangible property of the company in Kentucky, and was sustained as such by the Court of Appeals, as consistent with the provisions of the constitution of Kentucky in reference to taxation."

Again, in the case of Adams Express Co. v. Kentucky, 166 U. S. 171, 41 L. Ed. 960, the Supreme Court said: "We agree with the Circuit Court that it is evident that the word 'franchise' was not employed in a technical sense, and that the legislative intention is plain that the entire property, tangible and intangible, of all foreign and domestic corporations, and all foreign and domestic companies possessing no franchise, should be valued as an entirety, the value of the tangible property be deducted, and the value of the intangible property thus ascertained be taxed under these provisions; and as to railroad, telegraph, telephone, express, sleeping cars, etc., companies, whose lines extend beyond the limits of the state, that their intangible property should be assessed on the basis of the mileage of their lines within and without the state. But from the valuation on the mileage basis the value of all tangible property is deducted before the taxation is applied." To the same effect is Louisville & Nashville R. Co. v. Greene, 244 U. S. 522, 61 Law Ed.......

This court has also in a number of cases consistently followed the definition of a franchise tax laid down in the Henderson Bridge Co. case, and so now it may be regarded as thoroughly well settled not only by the Supreme Court of the United States but by this court that the franchise tax mentioned in section 4077 of the Kentucky Statutes is nothing more or less than a tax on the intangible property of the corporation or company subject to this statutory tax: Louisville Tobacco Warehouse Co. v. Commonwealth, 106 Ky. 165; Louisville & Nashville R. R. Co., etc. v. City of Henderson, 154 Ky. 575; Commonwealth v. Cumberland Telephone & Telegraph Co., 124 Ky. 535; Kentucky Heating Co. v. City of Louisville, 174 Ky. 142.

Treating this tax, which for convenience we will call a franchise tax, as a tax on the intangible property of the corporation that has a situs in this state for taxation, we find no obstacle in the way of the state subjecting it to the same rate of taxation to which other property is subjected. The right of the state to subject this character of

property to state taxation has been frequently and uniformly upheld by the Supreme Court of the United States. Thus in Postal Telegraph Cable Co. v. Adams, 155 U. S. 688, 39 L. Ed. 311, the court said:

"It is settled that where by way of duties laid on the transportation of the subjects of interstate commerce, or on the receipts derived therefrom, or on the occupation or business of carrying it on, a tax is levied by a state on interstate commerce, such taxation amounts to a regulation of such commerce and cannot be sustained. But property in a state belonging to a corporation, whether foreign or domestic, engaged in foreign or interstate commerce, may be taxed, or a tax imposed on the corporation on account of its property within a state, and may take the form of a tax for the privilege of exercising its franchises within the state, if the ascertainment of the amount is made dependent in fact on the value of its property situated within the state (the exaction, therefore, not being susceptible of exceeding the sum which might be leviable directly thereon), and if payment be not made a condition precedent to the right to carry on the business, but its enforcement left to the ordinary means devised for the collection of taxes. The corporation is thus made to bear its proper proportion of the burdens of the government under whose protection it conducts its operations, while interstate commerce is not in itself subjected to restraint or impediment." To the same effect is New York, L. E. & W. R. Co. v. Pennsylvania, 158 U. S. 431, 39 L. Ed. 1043.

In Adams Express Co. v. Ohio State Auditor, 165 U. S. 194, 41 L. Ed. 683, the court said: "Although the transportation of the subjects of interstate commerce, or the receipts received therefrom or the occupation or business of carrying it on, cannot be directly subjected to state taxation, yet property belonging to corporations or companies engaged in such commerce may be; and whatever the particular form of the exaction, if it is essentially only property taxation, it will not be considered as falling within the inhibition of the constitution. Corporations and companies engaged in interstate commerce should bear their proper proportion of the burdens of the governments under whose protection they conduct their operations, and taxation on property, collectible by the ordinary means, does not affect interstate commerce

otherwise than incidentally as all business is affected by the necessity of contributing to the support of government."

Again, in Fargo v. Hart, 193 U. S. 490, 48 L. Ed. 761, the court said: "A state cannot tax the privilege of carrying on commerce among the states. Neither can it tax property outside of its jurisdiction belonging to persons domiciled elsewhere. On the other hand, it can tax property permanently within its jurisdiction although belonging to persons domiciled elsewhere and used in commerce among the states. And when that property is part of a system and has its actual uses only in connection with other parts of the system, that fact may be considered by the state in taxing, even though the other parts of the system are outside of the state."

Again in United States Express Co. v. Minnesota, 223 U. S. 335, 56 L. Ed. 459, the court said: "The right of the state to tax property, although it is used in interstate commerce, is thoroughly well settled."

In St. Louis S. W. Ry. Co. v. State of Arkansas, 235 U. S. 350, 59 L. Ed. 265, the court said: "By whatever name the tax or taxes may be called that are fixed by reference to the value of the property, if they are not imposed because of its use in interstate or foreign commerce, and if they amount to no more than would be legitimate as an ordinary tax upon the property, valued with reference to the use in which it is employed, they are not open to attack; and it is permissible to value the property at what it is worth in view of its use in interstate commerce, so long as no added burden is imposed as a condition of such use."

The Supreme Court has also in Adams Ex. Co. v. Ohio, 166 U. S. 185, 41 Law Ed. 965, described the nature of the personal property known as intangible and set forth with great clearness and force the reasons why it should be taxed as other property is taxed.

Nor does the fact that this railroad company owns no main lines of track in this state relieve it from liability for this franchise tax. It comes into the state and into its depots situated herein with its trains and engines over the tracks that it has leased from the Kentucky & Indiana Terminal Co., or that it uses under some traffic arrangement with this company. It does business in this state as an operating railroad company, carrying freight and passengers to and from its depots in this state, and

owns tangible property located in this state, and by virtue of these facts it comes within the definition of the corporations subject to the tax described in section 4077 of the statutes, and is as much subject to a franchise tax as it would be if it owned the tracks upon which its trains run in this state. It is the ownership of real property or tangible personal property in this state or the use of such property under a lease or traffic arrangement by the carrier that comes into this state in the regular course of its business, and the doing of business here that subjects it to the payment of a franchise tax. When these conditions exist, it is not material, so far as the liability for this tax is concerned, whether it comes into this state on its own lines or over the lines of some other company; nor is it material what traffic or other arrangements it has with the company over whose lines it comes here: James, Auditor v. Kentucky Refining Co., 132 Ky. 353; Morrell Refrigerator Car Co. v. Commonwealth, 128 Ky. 447; Jefferson County v. Board of Valuation, etc., 117 Ky. 531.

Having thus determined that the railroad company is subject to the payment of a franchise tax, we will now consider upon what basis or by what method the franchise tax due by it shall be ascertained, and the amount of such tax that it should be required to pay during the time covered by this suit.

For convenience it may be here repeated that the company owns and operates 926 miles of main line railroad out of the state in addition to using some three miles of track located in this state and owned by the Kentucky & Indiana Terminal Co., over which it comes from New Albany, Ind., to its depots in this state.

The gross receipts of its Louisville passenger and freight agents during the years for which it is sought to recover a tax averaged approximately $835,000 each year; while its gross earnings upon business in Kentucky were approximately $37,000 a year, and its net earnings in Kentucky $12,000 a year. Its gross earnings upon all of its lines amounted to approximately $12,557,000 each year, and its net earnings to approximately $3,500,000.

At this point it may be said that while the judgment of the lower court does not show by what method the value of the amount of the omitted property subject to the franchise tax was arrived at, it is argued in brief of counsel for the Commonwealth that the assessment

should be made on a gross earning basis; that is to say, by capitalizing the gross earnings in Kentucky at 6 per cent. and deducting from the amount so found the assessed value of the tangible property in Kentucky, leaving as the balance the amount subject to the franchise tax; and it is apparent from the record that the lower court adopted this view.

On the other hand, counsel for the railroad company contends that the method adopted of arriving at the amount of the property subject to the franchise tax by capitalizing the gross earnings in Kentucky was erroneous, and that if any of its property was subject to this tax the net earnings in Kentucky and not the gross earnings in Kentucky should have been capitalized, and the assessment made on the amount found by capitalizing its net earnings after deducting therefrom the assessed value of its tangible property in this state; or that the assessment should have been on a mileage basis, that is, by ascertaining the value of its whole capital stock and then apportioning to Kentucky that proportion thereof represented by its used mileage in Kentucky as compared with its entire mileage, and deducting from Kentucky's proportion the assessed value of its tangible property in this state, leaving the difference as the amount subject to the franchise tax.

We are also advised by counsel for the railroad company that the net earning basis and the mileage basis would in this case produce about the same amount of property in value subject to a franchise tax, but we have not ourselves made any calculation for the purpose of determining the correctness of the statement made by counsel. That the lower court, however, did adopt the gross earning basis is made plain by the record. For example, there is filed with the record, on page 217, a statement made by W. D. Owens, auditor of the railroad company, designated "exhibit Owens No. 1," which purports to show the mileage in and out of Kentucky, the gross and net receipts in and out of Kentucky, as well as the net earnings and operating expenses in and out of Kentucky, or rather the amounts that he apportioned to Kentucky on a mileage basis. This exhibit shows that the gross earnings in Kentucky for 1904 were $32,668.30. Capitalized at 6 per cent. this would make, in round numbers, $544,471. Deducting from this $64,400, the value of its real property in Kentucky in 1904, according to exhibit

No. 1, on page 261 of the record, and $86,283, which was found to be the value of its office furniture and rolling stock in Kentucky in 1904 by the judgment of the circuit court, leaves, in round numbers, $393,788 subject to a franchise tax, while the lower court found the amount subject to a franchise tax for the year 1904 to be $393,566. For the other years the capitalization of the gross earnings, after deducting therefrom the value of the real property and the tangible property, will give as the amount assessable in each year subject to the franchise tax approximately the amount found to be assessable by the lower court. An accurate calculation on this basis might result in a slightly different amount each year from that found by the lower court, but it shows with sufficient certainty that the lower court in making the assessment of the property subject to a franchise tax adopted this method.

Now, if we take the net earning basis we find from the Owens exhibit that in 1904 the net earnings in Kentucky were $12,864.66, which capitalized at 6 per cent. will make, in round numbers, $214,411. Deducting from this $150,682, the value of the real property and the tangible property in Kentucky, leaves a balance of $63,728 subject to the franchise tax in place of $393,566 as found by the lower court.

It will thus be seen that there is a very material difference in these two methods of arriving at the value of the omitted property subject to a franchise tax, and if the ascertainment of the value of this omitted property on a mileage basis would result in practically finding the same amount as is found on the net earning basis, substantially the same difference between the mileage basis and the gross earning basis would exist as exists between the net earning basis and the gross earning basis.

Using these figures for illustrative purposes, we are now called on to determine the method by which intangible property subject to assessment in this state shall be ascertained and apportioned, and it must be confessed that the statutes on this subject do not furnish any accurate or indeed satisfactory guide by which the correct result may be arrived at, but fortunately these statutes of doubtful meaning have been made clear by judicial construction. The sections of the statutes that relate to this matter are 4077-4081, inclusive.

Section 4077 merely describes the character of corporations or companies subject to a franchise tax, and provides that this tax shall be paid and how it shall be apportioned in the state among the counties or taxing districts entitled to a share thereof.

Section 4078 only sets forth the nature of the reports that shall be made to the State Auditor by all corporations and companies subject to the tax.

Section 4079 provides that corporations or companies whose lines extend beyond the limits of the state or county shall, in addition to the facts required to be reported by section 4078, furnish other information to the Auditor. It then provides that if such corporation, company or association—that is, such corporations, companies or associations having lines extending beyond the limits of the state or county—be organized "under the laws of this state, the board shall fix the value of the capital stock of the corporation, company or association, as provided in the next succeeding section and from the amount thus fixed shall deduct the assessed value of all tangible property assessed in this state, or in the counties where situated. The remainder thus found shall be the value of its corporate franchise subject to taxation as aforesaid;" that is to say, as provided in section 4077.

Section 4080 provides that if the corporation, company or association be organized under the laws of any other state or government except as provided in the next succeeding section, "the board shall fix the capital stock in this state by capitalizing the net income derived in this state, or it shall fix the capital stock as hereinbefore provided, and will determine from the amount of the gross receipts of such corporation, company or association in this state and elsewhere, the proportion which the gross receipts of this state, within twelve months next before the thirtieth day of June of the year in which the assessments were made, bears to the entire gross receipts of the company, the same proportion of the value of the entire capital stock or the capitalizing of the net earnings in this state, less the assessed value of the tangible property assessed, or liable to assessment, in this state, shall be the correct value of the corporate franchise of such corporation, company or association."

While section 4081 provides that: "If the corporation organized under the laws of this state, or of some other state government, be a railroad, telegraph, telephone, ex-

press, sleeping, dining, palace or chair-car company or a corporation performing any other public service, the lines of which extend beyond the limits of the state, the said board will fix the value of the capital stock as hereinbefore provided, and that proportion of the value of the capital stock which the length of the lines operated, owned, leased, or controlled in this state, bears to the total length of the lines owned, leased or controlled in this state and elsewhere, shall be considered in fixing the value of the corporate franchise of such corporation liable for taxation in this state.''

It will thus be observed that section 4079 provides that the value of the capital stock shall be fixed ''as provided in the next succeeding section.'' But when we look to the next succeeding section, which is section 4080, we find that it provides that the board shall fix the capital stock in this state ''by capitalizing the net income derived in this state, or shall fix the capital stock as hereinbefore provided.'' But it is very plain that the words ''as hereinbefore provided'' have no meaning, because in no previous section of the statutes relating to this subject is any method provided for fixing the value of the capital stock.

If we look to section 4081 we find that it also uses the words ''the said board will fix the value of the capital stock as hereinbefore provided,'' and the only place in previous sections where any method is provided is in section 4080, which provides that the board shall fix the capital stock by capitalizing the net income derived in this state and will determine from the amount of the gross income receipts in this state and elsewhere the proportion which the gross receipts of this state bear to the entire gross receipts, and that the proportion of the value of the entire capital stock so found, less the assessed value of the tangible property in this state, shall be the value of the franchise.

It will further be observed that in section 4081 it is provided that ''that proportion of the value of the capital stock which the length of the lines operated, owned, leased, or controlled in this state, bears to the total length of the lines owned, leased or controlled in this state and elsewhere, shall be considered in fixing the value of the corporate franchise of such corporation, liable for taxation in this state.'' At this point, to avoid further reference, it may be said that this court in James v. United

States Fidelity & Guaranty Co., 133 Ky. 299, ruled that the word "and" in section 4080 should be substituted for the word "or," so that in fixing the value of the capital stock the board should take into consideration the gross earnings of the corporation in this state as well as its net earnings, whereas the statute as it reads, leaving the word "or" in, left the board at liberty, in fixing the value of the capital stock, to do so by capitalizing the net income, or by looking to the gross receipts.

We have been called on in many cases to consider different parts of these sections, but we do not find that the court has undertaken in any case that has come before it to construe them as a whole or in respect to the questions that are presented in this record, although they have been considered and construed as a whole by Judge Cochran, of the Federal court, in an able and exhaustive opinion in the case of Louisville & Nashville R. R. Co. v. Bosworth, that may be found in 230 Fed. 191, which opinion was subject to review by the Supreme Court of the United States in Louisville & Nashville R. R. Co. v. Greene, 244 U. S. 522, 61 L. Ed. .........., and affirmed except in one minor detail.

We may also here say that, in our opinion, section 4080 was intended to be applicable to and to furnish a method by which corporations other than railroad, telephone, telegraph, express, sleeping, dining, palace or chair-car or other public service carrier companies whose lines extend beyond the limits of the state might be subjected to the payment of a franchise tax; for example, title or guaranty companies, as may be seen by an examination of the cases of Hager, Auditor v. American Surety Co., 121 Ky. 791; James, Auditor v. United States Fidelity & Guaranty Co., 133 Ky. 299; James, Auditor v. American Surety Co. of N. Y., 133 Ky. 313; while section 4081 was intended to be especially applicable to common carrier companies whose lines extended beyond the limits of the state such as the Baltimore & Ohio Southwestern R. R. Co. As to this class of companies the state board of valuation and assessment is authorized to fix the value of the entire capital stock of the company or corporation from the information contained in the reports required by sections 4078 and 4079 to be furnished by the company or corporation, and after it has fixed the value of the whole capital stock it must then apportion to Kentucky that part thereof which the company or corporation may be

said to exercise in the conduct of its business in this state and deduct therefrom the assessed value of its tangible property in this state. And in fixing the value of the whole capital stock the board should take into consideration the net earnings, the gross receipts or gross earnings, the mileage and value thereof, and such other facts allowed by the statute as will enable it to determine with fairness the whole value of the capital stock.

When the whole value of the capital stock has been determined and the board comes to set apart to Kentucky that proportion thereof subject to taxation in this state, the question is, should it determine that proportion of the capital stock to be set apart to this state on a mileage basis or on a net income basis, or on a gross receipt or gross earning basis? In this case, as we have seen, counsel for the commonwealth contend that the gross earning basis should be adopted, while counsel for the railroad company contend that either the net income basis or the mileage basis should be adopted.

We do not find in the statutes any warrant for selecting exclusively the gross earning or the gross receipt basis, using these words interchangeably or as meaning the same thing, although it seems quite clear that gross earnings and not gross receipts should be used in reference to railroads, because the gross receipts of a railroad might include much more than its gross earnings. For example, if a railroad company sold a ticket, or took freight, for transportation over its own and other lines, only a part of the charge received by it could be claimed as a part of its gross earnings, while the entire charge might be a part of its gross receipts. But we may pass this without further comment because under no just method of taxation could the gross earnings of a railroad company be made the exclusive test by which to measure the amount of its property subject to the payment of a franchise tax although the gross earnings should be considered in determining the amount of this tax.

Nor do we find in the statutes any express authority for ascertaining the franchise tax due this state by a railroad company situated like the Baltimore & Ohio on an exclusively net earning basis.

We are also of the opinion, notwithstanding what was said in Commonwealth v. United States Express Co., 149 Ky. 755, that when the whole value of the capital stock has been thus ascertained, the board should set apart to

this state that proportion of the capital stock that the used or owned mileage in this state bears to the whole mileage, and after deducting therefrom the assessed value of the tangible property in this state, the remainder will be the value of the property subject to a franchise tax in this state.

As we have said, there is no express statutory authority for this method of determining the amount of property subject to a franchise tax in this state, but we think a fair interpretation of the statute and its purpose authorizes the adoption of this method, and we are well supported in this conclusion by the courts that have construed this statute, which was plainly intended to devise a scheme of assessment for this class of property that would be just both to the state and the corporations subjected to the tax. This method was approved by this court in Commonwealth v. Covington Bridge·Company, 114 Ky. 343.

This was also the method adopted by the board of valuation and assessment in determining the property subject to the franchise tax due to this state by the Louisville & Nashville R. R. Co., ·the Illinois Central R. R. Co., the Chesapeake & Ohio R. R. Co., and the Cincinnati, New Orleans & Texas Pacific Ry. Co., and the Supreme Court of the United States in the case of Louisville & Nashville R. R. Co. v. Greene, 244 U. S. 522, 61 L. Ed. .........., and in the case of Illinois Central R. R. Co. v. Greene, 244 U. S. .........., 61 L. Ed. .........., has approved this method, subject, however, to the exception that in cases where railroad companies own terminal facilities of great value situated out of the state, some deduction should be made from the total value of the capital stock on account of such terminals before setting apart to the state seeking to levy a franchise tax on a mileage basis the proportion due to the state.

The exceptional conditions authorizing this deduction are set forth in Fargo v. Hart, 193 U. S. 490, 48 L. Ed. 761; Minot v. Philadelphia, Wil. & Balt. R. R. Co., 18 Wallace 206, 21 L. Ed. 888; Western Union Teleg. Co. v. Massachusetts, 125 U. S. 530; 31 L. Ed. 790. It does not appear, however, from the record in this case that there are any such exceptional circumstances as were mentioned in these cases, and so this feature need not be further considered.

We are, therefore, of the opinion that the lower court was in error in adopting a gross earning basis, and on a return of the case the lower court should, upon the information contained in the record, and according to the method laid down by the Supreme Court of the United States in the Louisville & Nashville R. R. Co. case, *supra,* ascertain the value of the intangible property of the railroad company subject to a franchise tax in this state.

Another question in the case concerns the validity and correctness of the assessment by the lower court of the office furniture and rolling stock of the company having a taxable situs in Jefferson county, Kentucky, at a valuation of $86,283 as found by the lower court.

It is the contention of counsel for the railroad company that this character of property was not omitted for any of the years for which it was assessed, and of course if this be true, it was error in the lower court to assess any part of it as omitted property. It is a further contention of counsel that if the rolling stock should be found subject to assessment, the lower court fixed too high a value on it and adopted an erroneous method of fixing this value.

Section 4096 of the statutes requiring railroad companies owning or operating a railroad line in whole or in part in this state to report to the Auditor annually its real property and tangible personal property, including engines and cars, provides, in part, that the report to be made shall show "the total length of such railroad, including the length thereof beyond the limits of the state, and designating its length within this state, and in each county, city, incorporated town and taxing district therein, together with the average value per mile thereof, . . . for the purpose of being operated as a carrier of freight and passengers, including engines and cars, and a list of the depot grounds and improvements, and other real estate of the said company, and the value thereof, and the respective counties, cities and incorporated towns in which the same are located. That if any of said railroad companies own or operate a railroad or railroads out of this state, the president or chief officer of such company shall only be required to return such proportion of the entire value of all its rolling stock as the number of miles of its railroad in this state bears to the whole number of miles operated by said company in and out of this state."

Railroad companies are also required to make what is called an operating report under section 825 of the statutes, in which report it must specify its rolling stock and the value thereof, as well as other items of property. The company admits that it did not make any operating report, but in attempted compliance with section 4096 it did in each of the years in question in this suit file reports with the Auditor. These reports are all substantially alike, except as to the valuation of the property reported, and in no one of them are any engines or cars or office furniture reported or mentioned, except in the report made for 1913 which values the sidetracks of the company, "including value of rolling stock," at $13,800. These reports give the length of the main line and sidings, and the mileage in Kentucky; they also list "round-house, shops, office shed, freight shed" and give the value of each. On these reports the Auditor each year sent to the railroad company a statement of the assessment made by the board of this property and each of these statements shows that the property assessed by the board consisted of track mileage and "other property." In the years 1904, 1905 and 1906 the board assessed "other property" at $51,000; in 1907 and 1908 at $56,000; in 1909, 1910, 1911 and 1912 at $100,000; in 1913 at $85,000, and in 1914 at $90,000. The mileage in each of these years was also assessed at a specified sum.

It will be observed that the reports made by the railroad company for each of these years described the property other than trackage subject to assessment and taxation, while the statements showing the assessment and valuation sent out by the Auditor described the trackage assessed but did not describe the other property reported by the company, or any property other than whatever may have been included by the words "other property" contained in these statements.

It is now contended by counsel for the railroad company that as it did not report in any of these years property outside of its trackage amounting in value to anything like the sum at which the property included in the words "other property" was assessed by the board, therefore the board in making up its assessment must have from independent investigation ascertained the quantity and value of its engines, cars and office furniture and included this property in the words "other property" found in its statements to the railroad; while counsel for the commonwealth contend that, except for the year 1913,

the company did not report any rolling stock and did not for any year report office furniture, and therefore the board if it assessed the property other than trackage reported by the company at a greater value than the value contained in its reports, this excess assessment was due to the fact that the board raised the value of the property reported and not to the fact that it assessed property that was not reported.

The statute required the railroad company to report the number and value of its engines and cars and describe the character of each, and also to report other tangible personal property so that it may be identified and give the value of the same, as, for example, its office furniture. But it did not report any of this class of property for any of these years, except in its report for 1913, in which it made a pretense of reporting rolling stock in an item reading, "sidetrack in freight yard, 14th and Main street, 92/100 miles, at $15,000 per mile, including value of rolling stock, $13,800." It is plain, however, that this $13,800 did not include the value of any rolling stock, because the value of 92/100 of a mile of sidetrack at $15,000 per mile would be $13,800. So that we may say that it did not in any of the years make any report of its rolling stock.

Neither are we disposed to agree with counsel for the railroad company that any of this rolling stock or office furniture was included in the words "other property."

When a railroad company or other corporation makes a report that it is required to make by the statutes, it should make a full itemized and truthful report of all the property it is required to report, giving the value of the items so reported. If it fails to make such a report it will not be heard to say, in a suit against it to have omitted property assessed, that the property charged to have been omitted, and which should have been reported under an item describing that class of property, was included in some other item of property that it did report, or was assessed by the board upon information obtained by it outside of the report, unless it can show by convincing evidence that the alleged omitted property was, in fact, inadvertently or by mistake reported under another item or was, in fact, considered and valued by the board in the same way that it would have been considered and valued if correctly reported. No presumption will be indulged that the company re-

ported in a general way items of property omitted from its reports or that the board assessed any item of property not specifically reported. On the contrary, the presumption will be that it did not report them and that they were not assessed. A further presumption will be that the board in making the assessment confined itself strictly to the items reported by the company; Kentucky Heating Co. v. City of Louisville, 174 Ky. 142; Commonwealth v. Kentucky Heating Co., 176 Ky. 35; Bell's Trustee v. Lexington, 120 Ky. 199; Commonwealth v. L. & N. R. R. Co., 142 Ky. 663; Hillman Land & Iron Co. v. Commonwealth, 148 Ky. 331.

Nor is there anything in conflict with what we have said in Commonwealth v. L. & N. R. R. Co., 149 Ky. 829, or in Commnowealth v. C. & O. Ry. Co., 28 Ky. L. R. 1110.

This being our view of the matter, we will not take up further time discussing this feature of the case, as there is no evidence in behalf of the railroad company to show that the property admittedly not specifically reported was embraced in other items or that it was actually considered and valued by the board. On the contrary, the evidence shows that the rolling stock and office furniture omitted was not assessed by the board.

Passing now to consider the assessment made by the lower court of engines and cars, as there is no claim made of error in the assessment of the office furniture, the facts appearing in the record are these: In operating its trains coming into this state the record shows that the railroad company uses five passenger engines valued at $13,500 each or a total of $67,500; four freight engines valued at $12,290 each or a total of $49,160; thirteen passenger cars valued at $4,021 each or a total of $52,263, a baggage car valued at $3,640, an express car valued at $1,029 and forty-nine freight cars valued at $600 each or a total of $29,500, making a total of $198,423. But the lower court fixed the value of this rolling stock for taxation in this state for each of these years at $86,283, and included in this assessment $700 on account of omitted office furniture, or, leaving out the office furniture, at $85,583. As the assessed value of this class of property must be deducted from the value of the capital stock in order to arrive at the value of the intangible property subject to a franchise tax, the sum at which rolling stock and office furniture was assessed might not in some cases be so material if it were, in fact, assessed at all; but, obviously, it should be assessed before being deducted from

the value of the capital stock, or else this species of tangible property might escape taxation entirely.

In this case, as we have seen, this species of tangible, personal property was not assessed at all by the board, and therefore it becomes important that it should be assessed by the court and a correct valuation placed thereon in order that taxes may be collected on this valuation independent of the tax on the intangible property; and so that the assessed value of the tangible property may be deducted from the value of the capital stock, to the end that the company may not be assessed twice on this tangible personal property.

The facts shown in the record as to the engines and cars may be stated as follows: The company operates five passenger trains a day into Louisville and the same number out, each train consisting of four Baltimore and Ohio cars; and two freight trains each day into and out of Louisville, each containing about twenty-five cars. None of these engines or cars remain permanently in this state, but all of them, or other like engines and cars, are here a part of the time, and some of the engines that pull these trains, or like engines, and some of the cars, or like cars that make up the trains are in this state all the time. It further appears from the record that, on an average, two passenger engines and three freight engines are here all the time; and that two passenger cars, one baggage car and one express car, as well as forty-nine freight cars are here all the time; that the freight engines are worth $12,290 each, the passenger engines $13,500 each, the passenger cars $4,021 each, the baggage cars $3,640 each and the express cars $1,029 each, and the freight cars, averaging the value of a box and flat car, $600 each.

Now, should the whole value of these engines and cars be subject to taxation in this state as contended by counsel for the Commonwealth, or none of it, as contended by counsel for the railroad company, or if only a portion of it, what portion and on what basis?

We may at once say that under no statute or authority that we have found can all of these engines or cars be subjected to assessment and taxation in this state, but that whatever portion of them may be said to be permanently in this state is liable, we have no doubt. The constitution of the state declares in part, in section 172: ''All property, not exempted from taxation by this constitution, shall be assessed for taxation at its fair cash value : . . .''. And section 174 of the constitution provides:

"All property, whether owned by natural persons or corporations, shall be taxed in proportion to its value, unless exempted by this constitution; and all corporate property shall pay the same rate of taxation paid by individual property." And as some of these engines and cars were at all times in this state, it is plain that such proportion of them as were at all times in this state is liable for assessment and taxation here: City of Covington v. Pullman Co., 121 Ky. 218.

It has also been settled by the United States Supreme Court that engines and cars of a railroad company coming into a state continuously in the regular course of business may be taxed in that state, although no one of the engines or cars so coming into the state may remain in the state a sufficient length of time to give any particular engines or cars a situs in the state for taxation.

In Maryland v. Baltimore & Ohio R. R. Co., 127 U. S. 117, 32 L. Ed. 94, the court, in considering a case in which the engines and cars of a Maryland corporation made regular trips through the state of Virginia, said, in respect to the right of Virginia to lay a tax on these engines and cars, that:

"If the Baltimore & Ohio R. R. Co. is permitted by the state of Virginia to bring into its territory and there habitually to use and employ a portion of its movable personal property, and the railroad company chooses so to do, it would certainly be competent and legitimate for the state to impose upon such property, thus used and employed, its fair share of the burdens of taxation imposed upon other similar property used in the like way by its own citizens. And such a tax might be properly assessed and collected in cases like the present, where the specific and individual items of property so used and employed were not continuously the same, but were constantly changing, according to the exigencies of the business. In such cases the tax might be fixed by an appraisement and valuation of the average amount of the property thus habitually used, and collected by distraint upon any portion that might at any time be found. Of course the lawfulness of a tax upon vehicles of transportation used by common carriers might have to be considered in particular instances with reference to its operation as a regulation of commerce among the states, but the mere fact that they were employed as vehicles of transportation in the interchange of interstate com-

merce would not render their taxation invalid." To the same effect is Pullman's Palace Car Co. v. Commonwealth of Pennsylvania, 141 U. S. 18, 35 L. Ed. 613.

Again in American Refrigerator Transit Co. v. Hall, 174 U. S. 70, 43 L. Ed. 899, the same court had before it a question involving the right of the state of Colorado to impose a tax upon cars owned by an Illinois corporation that were operated in Colorado, and in holding them subject to a tax, the court said:

"It having been settled, as we have seen, that where a corporation of one state brings into another, to use and employ, a portion of its movable personal property, it is legitimate for the latter to impose upon such property, thus used and employed, its fair share of the burdens of taxation imposed upon similar property used in like way by its own citizens, we think that such a tax may be properly assessed and collected, in cases like the present, where the specific and individual items of property so used and employed were not continuously the same, but were constantly changing, according to the exigencies of the business, and that the tax may be fixed by an appraisement and valuation of the average amount of the property thus habitually used and employed. Nor would the fact that such cars were employed as vehicles of transportation in the interchange of interstate commerce render their taxation invalid." To the same effect is Union Refrigerator Transit Co. v. Lynch, 177 U. S. 149, 44 L. Ed. 708.

From these cases it will be seen that there is no constitutional objection to the imposition of a tax on the engines and cars of a foreign corporation that are used in this state, and that the fact, that the engines and cars are engaged in interstate commerce, does not deprive the state of the right to lay the tax. It is further settled by these cases that the value of such number of these engines and cars as may be said to be permanently in use in this state, which in the aggregate amounts, as we have seen, to $105,981, may be assessed each year against the company and is subject to be taxed at the same rate of taxation as other property in the taxing districts in this state in which these engines and cars are used.

We also think that an assessment on the average number of engines and cars constantly in use in this state is a more just and equitable assessment, and more easily and correctly estimated than an assessment on what is

called the mileage basis, examples of which may be found in Pittsburg, C. C. & St. L. R. R. Co. v. Backus, 154 U. S. 421, 38 L. Ed. 1031; Pullman's Palace Car Co. v. Commonwealth of Pennsylvania, 141 U. S. 18, 35 L. Ed. 613, and cases cited therein sustaining the mileage scheme of taxation, and we therefore, in this case, adopt the former plan.

The statute does not prescribe any scheme for the assessment of the rolling stock of railroad companies other than the general one providing for the assessment of all personal property having a situs for taxation in this state. And so the rolling stock of railroad companies is to be assessed as other personal property is assessed. This being so, it is manifest that when the value of such rolling stock that may be said to be permanently employed in this state can be estimated, it should be taxed according to its value and in the same manner as other personal property, and accordingly the method we have adopted seems to us to be free from objection.

Counsel for the railroad company, however, insists that if this rolling stock is liable for taxation, the tax should be apportioned on a mileage basis, and in support of this relies on section 4096. Of course if the statute prescribed this method we would follow it as exclusive, but we do not think it does. This statute, in speaking of the reports that railroad companies are required to make to the State Auditor, provides: "If any of said railroad companies own or operate a railroad or railroads out of this state, the president or chief officer of such company shall only be required to return such proportion of the entire value of all its rolling stock as the number of miles of its railroad in this state bears to the whole number of miles operated by said company in and out of this state." It will thus be seen that this statute refers only to the reports that shall be made by the company and does not attempt to indicate the method of assessing the rolling stock.

There is another argument that may be briefly noticed. This is the claim of exemption from liability for the franchise tax upon the ground of contemporaneous construction. This contention is rested on the evidence of Mr. Charles H. Gibson, who was for many years—and during the years in controversy here—the attorney for the company. Mr. Gibson testified that for several years following the enactment in 1893 of sections 4077-4081, the company made out its reports under these sections, and

he filed them with the State Auditor each year, at the same time protesting that the company was not liable for a franchise tax because it was engaged exclusively in interstate commerce. He further said that although the reports were filed, no franchise tax was assessed; that during the administration of tSate Auditor Coulter this Auditor told him that he need not file these reports any more as he did not want the records of his office encumbered with reports as long as there were no taxes to be assessed; that after this no reports were filed or offered to be filed.

Previous to the administration of Coulter as Auditor, which commenced in 1900 and ended in 1903, although the statute, substantially as it now appears, was in force, no franchise taxes were assessed or collected, but during the term of Auditor Coulter, and at his suit, this court, in the case of Southern Ry. Co. in Kentucky v. Coulter, 113 Ky. 657, decided in 1902, held that railroad corporations were subject to a franchise tax; and before this time the Supreme Court of the United States had written in several cases that such a tax could be imposed on carrier corporations engaged in interstate commerce: Adams Express Co. v. Ohio State Auditor, 165 U. S. 194, 41 L. Ed. 683; Henderson Bridge Co. v. Commonwealth of Kentucky, 166 U. S. 150, 41 L. Ed. 953.

So that whatever may have been the construction of this act previous to 1902, it is plain that after that time the State Auditor and the Board of Valuation and Assessment must have known that they had the power to assess and collect a franchise tax, and we may also fairly assume that the railroad company and its attorney, Mr. Gibson, knew that this company should file the reports required by the statute, and that it was liable for a franchise tax. But it did not, after 1902, file the reports or pay such a tax. Under these circumstances we find no merit whatever in the plea of contemporaneous construction, which is really rested on the ground that, during the years 1904-1913, the state officers charged with the administration of this law did not take any action looking to the assessment or collection of a franchise tax.

But mere non-action upon the part of the officers of the state is not to be treated as contemporaneous construction: Commonwealth v. Kentucky Distilleries & Warehouse Co., 143 Ky. 314.

The rule that should·be applied in this case is stated as follows in City of Louisville v. Board of Education, 154 Ky. 316: "The doctrine of contemporaneous construction is frequently invoked and sometimes applied as an aid in the construction of statutes of doubtful meaning. . . . But we do not know of any authority that would authorize the court to resort to the doctrine of contemporaneous construction for the purpose of defeating the effect of plain and unambiguous constitutional and statutory provisions that impose taxes. The mere failure of public officers charged with a public duty to enforce statutory and constitutional provisions in respect to the levy and collection of taxes, or the acquiescence of public officers in conditions that exempted certain property from its fair share of the burdens of taxation, should not be permitted to stand in the way of the correct administration of the law or be construed to estop more diligent and efficient public officers when they·attempt to perform their duty by bringing into the revenue proper subjects of taxation that had theretofore been allowed to escape the payment of taxes."

The remaining question relates to the penalties that the statute allows to revenue agents and which in this case, as awarded by the lower court, amounted to $7,000. It is not questioned that it was proper to allow these penalties on the amount of any taxes recovered on account of the value of rolling stock and· office furniture, but insisted that no penalty should be awarded on the sum recovered on account of the franchise tax. The argument in this behalf is that as the railroad company would and could have filed its reports and paid these taxes each year, it would be unjust to burden it with penalties when its failure to file the reports and pay its taxes was due to the fact that the administrative officers of the state were of the opinion that it need not file any reports or pay any taxes of this nature.

A sufficient answer to this argument may be found in what we have said on the subject of contemporaneous construction, and for the reasons there assigned we think the company should be required to pay the statutory penalty on the amount of franchise tax recovered. If the evidence had shown that this franchise tax was not paid in the years 1904-1913, inclusive, because the State Auditor was of the opinion that no franchise tax was due, it would not be just to penalize the company for fail-

ing to pay it, although it was due and should have been paid. But that is not the case we have. There is no evidence whatever that in any of these years the State Auditor, or any other state officer authorized to speak for the state, was of the opinion that a franchise tax should not be paid by this company or that it need not file any reports or so advised the company. It may be true that the reports were not filed or the tax paid because of oversight or inattention on the part of the officers of the state charged with the duty of looking after this matter, but this circumstance does not excuse the company from doing its duty under the statute.

Wherefore, the judgment is reversed, with directions to enter a judgment in conformity with the principles laid down in this opinion.