230 S.W.2d 924 (1950)
REEVES
v.
ISLAND CREEK FUEL & TRANSPORTATION CO.
Court of Appeals of Kentucky.
March 17, 1950.
As Modified on Denial of Rehearing June 2, 1950.
*925 Henry M. Johnson, Louisville, Lucian L. Johnson, Louisville, Woodward, Hobson & Fulton, Louisville, Tilford & Wetherby, Louisville, Stanley C. Moebus, County Atty. Campbell County, Newport, Charles H. Riedinger, County Atty. Lewis County, Vanceburg, James McGarry, County Atty. Kenton County, Covington, John H. Clarke, Jr., County Atty. Mason County, Maysville, for appellant.
Will H. Fulton, Louisville, for Campbell County.
Henry J. Tilford, Louisville, for Lewis, Kenton and Mason Counties.
Henry J. Tilford, Louisville, amicus curiæ.
L. W. Scott, Newport, Rolla D. Campbell, Huntington, W. Va., F. A. MacDonald, Huntington, W. Va., Waite, Schindel & Bayless, Cincinnati, Ohio, Doolan, Helm, Stites & Wood, Louisville, for appellee.
*926 James W. Stites, Louisville, amicus curiæ.
LATIMER, Justice.
Pursuant to KRS 132.330, omitted tax assessment proceedings were instituted by the Commonwealth on relation of the Commissioner of Revenue, against appellee, Island Creek Fuel and Transportation Company.
Appellee sought, in the Franklin Circuit Court, and obtained an injunction, permanently enjoining Clyde Reeves, as Commissioner of Revenue, his successors, agents, and attorneys, from prosecuting the omitted tax assessment proceedings in the County Courts of Boyd, Greenup, Lewis, Mason, Bracken, Pendleton, Campbell, and Kenton Counties. From that judgment, this appeal is prosecuted.
The question before us, therefore, is whether or not the Transportation Company's towboats and barges are subject to assessment in the manner proposed by the counties above.
The Island Creek Fuel and Transportation Company, a subsidiary of the Island Creek Coal Company, is a Maine corporation. It operates two towboats and a fleet of barges on the Ohio River, principally between Huntington, West Virginia and Cincinnati, Ohio. Its business, almost entirely, is the transportation of coal for the parent company. It has no published schedule of rates or charges. It does not hold itself out generally to transport coal or any other commodity for anyone except the parent company, and rarely performs towing or any service for others than the parent company, and then only by special contract. Approximately 500,000 tons of coal are handled annually by appellee, whose parent organization controls distribution outlets in Cincinnati. Appellee's principal office and place of business is located at Huntington, West Virginia, where extensive loading facilities are maintained. It has extensive docking and unloading installations, including cranes and elevators at Cincinnati. It also maintains mooring facilities at Coal Haven, Campbell County, Kentucky, which are used when the exigencies of navigation require. The tows and barges have never been in Maine, the domiciliary state. The appellee does not pay an ad valorem tax on the craft in issue, and has never paid any such tax to any jurisdiction. It has never been authorized to do business in Kentucky, but within the years involved has made 116 calls at Kentucky ports, delivering 154 barges.
The proceedings herein were brought to assess omitted ad valorem taxes for 1938 to 1942, inclusive. During the years above appellee operated a fleet of river craft consisting of approximately 54 barges and 2 towboats. In each of the original proceedings to assess the omitted taxes, a statement was filed alleging that the Company habitually and continuously operated its boats and barges along a regular route between Huntington, West Virginia and Cincinnati, Ohio, of which route 94.6% was in Kentucky and 5.4% in West Virginia; that the aliquot part of 94.6% of the Company's boats and barges, therefore, had a taxable situs in Kentucky, and proportionate fractions of that aliquot part, determined by mileage, had a taxable situs in the various counties and school districts.
Appellee insists that the attempted assessments are illegal because: (1) They are not only unauthorized by the Constitution of Kentucky or any Kentucky Statute, but are contrary thereto; (2) The Transportation Company's boats and barges would not be taxable by the Commonwealth, or any of its subdivisions, even if such taxation were specifically authorized by the Constitution or Statute; (3) The taxation of Transportation Company's boats and barges in the manner proposed would violate the laws and Constitution of the United States, and particularly the Ordinance of 1787 and the Virginia-Kentucky Compact.
It is apparent that if appellee is correct in any one of its contentions, the judgment of the lower court is proper. All points and propositions raised and discussed by appellant are directed to a converse view and must necessarily be included in a consideration of appellee's contentions. We shall, therefore, discuss the above contentions of appellee. Attention is directed, first, to contention (2) above. This seems to be the logical beginning point. A finding that the property sought to be assessed herein has *927 not acquired a tax situs in Kentucky would obviate a consideration of the other propositions.
It appears that the application of the principle mobilia sequuntur personam, which precluded the taxing of property belonging to a nonresident owner, has given way to the more modern rule that the actual situs of visible tangible personal property, and not the domicile of the owner, determines the place of taxation, and that tangible personal property may be taxed in the state where it is physically located. For purposes of taxation, rights in tangibles are regarded as localized at the place where the tangible itself is located. Such property is subject to taxation by the state of its actual situs regardless of the domicile of the owner, and is not affected by the fact that the property is employed in interstate transportation either by water or by land.
Appellee strongly insists that these tugs and barges have not acquired a taxable situs in Kentucky in that they are only transiently present and that the essential element of permanency is lacking. It is insisted that there are no termini; no particular destination or regular port of call in Kentucky; and that the time spent by appellee's barges and tugs in transit through Kentucky waters is sporadic and irregular. In one of the briefs it is said: "To acquire such a situs the boats and barges must be permanently situated in the non-domiciliary State and permanently means continuously throughout the year, not a fraction thereof, whether days or weeks." True, the factors above mentioned do enter into the determination of taxable situs. The idea of permanency, with respect to personal property, seems generally to be, that for such property to acquire a taxable situs, it must have a more or less permanent location as distinguished from a transient or temporary one. However, permanency in the sense that it must be fixed like real property is not essential to the establishment of a taxable situs for personal property. It seems to be sufficient, when in the ordinary course of business, that property is present and being used and employed with a consistent continuity and not spasmodically and temporarily.
Following this concept there seems to have evolved the idea of estimating, by some reasonable method of aliquot division, the situs of any particular part of a mass of property whenever the mass is being used in interstate business and it is impossible to assign a situs at large to it in entirety. Such method of determining the share of an interstate mass has been applied to a fleet of steamships, lines of railroad, and the mass of railroad cars. See Union Tank Line v. Wright, 249 U.S. 275, 39 S. Ct. 276, 63 L.Ed. 602; City of Covington v. Pullman Co., 121 Ky. 218, 89 S.W. 116; and Baltimore & O. S. W. R. Co. v. Com., 177 Ky. 566, 198 S.W. 35.
It now appears that courts generally adhere to the rule that property sent into a state by a nonresident, to be used or employed permanently there, must bear its fair share of the burden of taxation, although no one unit of such property is ever more than temporarily located within the taxing state. It follows then that where the specific and individual items of property used and employed in the state are not continuously the same, but are constantly changing according to the exigencies of business, the tax should be fixed by an appraisement and valuation of the average amount of the property thus habitually used and employed.
In Commonwealth v. Union Pacific Railroad Company, 214 Ky. 339, 283 S.W. 119, 121, 49 A.L.R. 1091, in elaborating upon this concept, it was said: "As we have seen, chattels `transiently present in the transactions of commercial operations,' or but temporarily located within the state, do not as a general proposition acquire a situs for taxation within such state. However, if the resident of one state brings or sends his property into another state to use and employ it permanently there, it is settled that such property must bear its fair share of the burden of taxation, although no one unit of such property is ever more than temporarily located within the taxing state. The shifting units but take the place of each other, and the property as a whole receives the state's protecting care. Even as the hive is the hive, though the bees of the spring have long since been replaced by the bees of the *928 summer and these by the bees of the fall, so the property is the property, though its units have changed many times in the course of the year. But, in the nature of things, there must be some cohesive principle which brings together the changing and shifting units so that we see the whole and not its parts. We have seen that the mere temporary presence of the chattel does not give the state the power to tax it. What is it that makes the mass of which it is a part, taxable when it itself is not taxable? Is it not the fact that the owner is using and employing them together as parts of a whole, which whole receives the protection of the state, that gives the state the right to tax them, not as units but as a whole? That this is true seems clear to us, and our conclusions are fortified by the opinions of the Supreme Court in passing on the right of the states to tax tank cars, refrigerator cars, Pullman cars and cars of like character owned by nonresident companies, but present in average number within such state throughout the taxing period." See also Annotated Cases, 49 A.L.R. 1099.
Let us then, in the light of the above, look at the matter circumspectly. We note, first, that the parent company is an operator and producer of coal. Thus we start with the idea of permanency of business. Not only does the parent company produce coal, but undertakes, through its subsidiary organization, to transport and distribute its coal. In order to do this, this subsidiary company maintains extensive loading facilities at Huntington, West Virginia. Therefore, we must draw the thread of permanency from the parent company to the place of loading in West Virginia. This subsidiary company also maintains extensive docking and unloading installations at Cincinnati. In addition thereto, it has mooring facilities at Coal Haven in Kentucky. The installation of these facilities all imply permanence of business operations. In order to carry out its permanent objective, the instruments and means of transportation become a necessary part of the operating business. Thus the thread of permanency is drawn from Huntington through the waters of the Ohio from and to these loading and unloading points. In carrying out the business of distributing annually approximately 500,000 tons of coal, about 94.6% of the mileage covered by the craft of the subsidiary company is within Kentucky. We, therefore, do not limit our view to the accidents of appearance but look at all the facts which have inherent or relative significance. By correlating and coordinating these facts, we find a consistent, ordered and coherent whole. The fact then remains that the tugs and barges, an indispensable part of the whole as designed by appellee or its parent company in the operation of its business, are as necessarily present in Kentucky as the loading and unloading facilities have their situs in Ohio and West Virginia, respectively. This continuity and consistency of presence in Kentucky attaches such permanency as to take it out of the zones of mere transiency or a sporadic and temporary presence. The parts of this whole receive the protection of this State. We conclude they have acquired a tax situs here.
We now turn our attention to appellee's proposition (1) above. It is insisted that apportioned assessments of ad valorem taxes are void in Kentucky because same have no authorized constitutional or statutory sanction. Appellant takes the converse view and insists that the Commonwealth of Kentucky not only has power to impose ad valorem taxes on the aliquot part of boats and barges of a foreign corporation having a situs within the boundaries of the taxing districts in Kentucky, but that the Constitution and Statutes mandatorily require that all property in Kentucky shall be taxed.
Section 171 of the Constitution, dealing with the levy and collection of taxes, provides that all taxes shall be levied and collected by general laws. It provides that taxes shall be uniform upon all property of the same class and that the General Assembly shall have power "to divide property into classes and to determine what class or classes of property shall be subject to local taxation."
Section 172 of the Constitution provides: "All property, not exempt from taxation by this Constitution, shall be assessed for taxation at its fair cash value * * *."
*929 Section 174 provides: "All property, whether owned by natural persons or corporations, shall be taxed in proportion to its value, unless exempted by this Constitution; * * *."
Section 175 provides: "The power to tax property shall not be surrendered or suspended by any contract or grant to which the Commonwealth shall be a party."
Section 3 of the Constitution provides that "* * * no property shall be exempt from taxation except as provided in this Constitution, * * *."
Thus, we see the constitutional provision that "all property", unless exempted, shall be taxed in proportion to its value. These taxing provisions are "self-executing". The requirement is that all property, unless exempted, be assessed for taxation and taxed. No discretion is left to the General Assembly.
We now look to the statutory provisions. KRS 68.090 provides: "For county purposes the fiscal court of each county * * shall levy an ad valorem tax on all property subject to county taxation."
KRS 132.190 provides: "The property subject to taxation, unless exempted by the Constitution, shall be as follows: (a) All real and personal property within this state, * * *."
KRS 132.200 provides: "All property subject to taxation for state purposes shall also be subject to taxation in the county, city, school or other taxing district in which it has a taxable situs, * * *."
Thus, we see the Statutes speak definitely in expressly authorizing and requiring that all property be taxed.
Complaint is specifically directed to the system of fragmentary taxation. Appellee contends that in order to have such system of taxation; that is, application of the apportionment method, it requires definite and specific legislation with reference thereto. We call attention to the case of City of Covington v. Pullman Co., 121 Ky. 218, 89 S.W. 116, wherein the City of Covington was allowed to impose ad valorem taxes on the average number of pullman cars present in the City; and Baltimore & O.S.W.R. Co. v. Commonwealth, 177 Ky. 566, 198 S.W. 35, 45, where it was held that rolling stock of a foreign railroad company should be assessed for ad valorem taxes on the basis of the "average number of engines and cars constantly in use" in Kentucky. This was done in the absence of any apportionment statute. It was said in that case: "The statute does not prescribe any scheme for the assessment of the rolling stock of railroad companies other than the general one providing for the assessment of all personal property having a situs for taxation in this state."
In Johnson Oil Refining Co. v. State of Oklahoma ex rel. Mitchell, 290 U.S. 158, 54 S.Ct. 152, 78 L.Ed. 238, attempt was made by Pawnee County, Oklahoma, to assess ad valorem taxes on all of the oil tank cars used by the Refining Company, an Illinois corporation, in hauling its products from its refinery to places outside the State. Throughout the year's time about 84% of the cars were without the county. The Supreme Court of Oklahoma held that all of the tank cars were taxable by Oklahoma and by Pawnee County. The Supreme Court, in reversing, directed that taxes be assessed on the "average number" of cars in the county. Even though the Supreme Court of Oklahoma stated in its opinion that there was no law authorizing a tax based upon the average number, yet the U.S. Supreme Court remanded the case and directed that taxes be assessed on the average number.
Appellee insists that the apportionment method of taxing transient personalty must always of legal necessity be authorized by explicit legislation, and that under statutory provisions, conferring upon counties authority to assess personalty for taxation, a county can by no means be permitted, under its general taxing power, to apportion or allocate to itself a part or share of the value of an item or unit of personalty.
In City of Cincinnati v. Commonwealth, 292 Ky. 597, 167 S.W.2d 709, in discussing the method of allocation, this court cited Butler Bros. v. McColgan, 315 U.S. 501, 62 S.Ct. 701, 704, 86 L.Ed. 991, in which the Supreme Court held that "One who attacks a formula of apportionment carries a distinct *930 burden of showing by `clear and cogent evidence' that it results in extraterritorial values being taxed."
Appellant contends that the mileage basis, as undertaken herein, is the proper basis to adopt in view of the Supreme Court's decision in Ott v. Mississippi Valley Barge Line Co., 336 U.S. 169, 69 S.Ct. 432, 93 L. Ed. 585.
True, if the statute imposing the tax provided a method of apportionment, that method would be exclusive. But, as stated in Baltimore & O.S.W.R. Co. v. Commonwealth, supra, the statute does not prescribe any scheme for the assessment. Consequently, we must look to see if the mileage basis is a fair and just method of calculating the aliquot part of appellee's boats and barges which have acquired a tax situs in Kentucky and in the several taxing districts.
Appellee conducts its operations throughout the year with relatively few interruptions. Its tugs and barges move along a route of 162 miles. We are persuaded that appellant's proposed method of assessment is logical and fair; that is, to apportion the taxes against the Company's boats and barges in proportion to the length of the line operated and location in each State, county and other taxing jurisdictions. This general scheme has foundation in numerous decisions. See State Tax Commission v. Central Greyhound Lines, 252 Ky. 300, 67 S.W.2d 35; Pullman's Palace Car Co. v. Commonwealth of Pennsylvania, 141 U.S. 18, 11 S.Ct. 876, 35 L.Ed. 613; City of Cincinnati v. Commonwealth, supra; Ott v. Mississippi Valley Barge Line Co., supra; and City of Covington v. Pullman Co., supra.
We turn our attention now to the third proposition. It is contended that the proposed assessments would violate the commerce clause of the United States Constitution, art. 1, § 8, cl. 3, and the rights of the Transportation Company under the Ordinance of 1787, and the Virginia Compact. There is little or no discussion in appellee's brief relative to the violation of the commerce clause of the United States Constitution. However, we find no violation thereof. Appellee strenuously argues that the assessment of its boats and barges, if made, would violate the terms of the Ordinance of 1787 and the Compact of Kentucky with Virginia. The pertinent provisions of the above, respectively, are:
"The navigable waters leading into the Mississippi and St. Lawrence, and the carrying places between the same, shall be common highways, and forever free, as well to the inhabitants of the said territory, as to the citizens of the United States, and those of any other States as may be admitted into the Confederacy, without any tax, impost, or duty therefor.
"The use and navigation of the river Ohio, so far as the territory of the proposed State, or the territory which shall remain within the limits of this Commonwealth lies thereon, shall be free and common to the citizens of the United States."
We do not find extreme difficulty with this proposition. This is not an attempt to impose a usage tax on navigation, or a license tax, a privilege tax, or any tax on or because of the transportation or the right of transit through the State. It is nothing more than an attempt to tax property having a tax situs within the State, whether on the river or off the river. The general rules and principles applicable herein have been enunciated by the courts on numerous occasions. See Escanaba and Lake Michigan Transportation Company v. City of Chicago, 107 U.S. 678, 2 S.Ct. 185, 27 L.Ed. 442; Huse v. Glover, 119 U.S. 543, 7 S.Ct. 313, 30 L.Ed. 487; City of Cincinnati v. Louisville & N.R. Co., 223 U.S. 390, 32 S.Ct. 267, 56 L.Ed. 481; Coyle v. Smith, 221 U.S. 559, 31 S.Ct. 688, 55 L.Ed. 853; Highman Towing Co. v. Cocreham, D.C., 70 F.Supp. 628; Id., 5 Cir., 165 F.2d 789. We cannot agree with appellee in this last contention.
We have had before us the benefit of elaborately and ably prepared briefs. To incorporate herein a full discussion of all matters argued in briefs would unduly lengthen this opinion. We have, therefore, limited our discussion to those which appear to us to have persuasive significance. The cases cited by appellee in support of its propositions are readily distinguishable, *931 either on their facts or because predicated upon an entirely different basis, such as in the case of American Barge Line Company v. Board of Supervisors, 246 Ky. 573, 55 S.W.2d 416, where it will be noted that the Commonwealth based its claim solely on a supposed change of domicile and sought to apply the mobilia maxim, and made no attempt to show that the property had a tax situs in Kentucky.
The current method of procedure herein is an authorized and approved method of procedure. See The Texas Company v. Commonwealth of Kentucky, 303 Ky. 590, 198 S.W.2d 316; and City of Newport v. Pennsylvania Railroad Co., 287 Ky. 613, 154 S.W.2d 719.
We conclude, therefore, that an aliquot portion of appellee's boats and barges has a taxable situs in Kentucky and in the river counties along the fixed route; that the apportionment method of taxation has constitutional and statutory sanction; and that same is not violative of the commerce clause of the United States Constitution, the Ordinance of 1787, or the Virginia Compact.
Wherefore, the judgment is reversed with directions to enter judgment consistent herewith.