## Bosworth, Auditor v. Evansville & Bowling Green Packet Company.

(Decided January 18, 1918.)

## Appeal from Franklin Circuit Court.

1.  Taxation—Property Within Jurisdiction of State—Commerce.—A state cannot tax the privilege of carrying on commerce among the states: neither can it tax property outside of its jurisdiction belonging to persons domiciled elsewhere. But it can tax property permanently within its jurisdiction although belonging to persons domiciled elsewhere and used in commerce among the states; and when that property is part of a system and has its actual uses only in connection with other parts of the system, that fact may be considered by the state in taxing, even though the other parts of the system are outside of the state.

2.  Taxation—Gross Receipts of Corporation—Commerce.—While a state cannot levy a tax upon the gross receipts of a corporation doing interstate business, or require the payment of a tax as a condition precedent to the doing of such business, it may use such gross receipts, or like elements, fairly to measure a tax in itself lawful, and without the necessary effect of burdening interstate commerce.

3.  Taxation—Corporations Engaged in Interstate Commerce.—Corporations and companies engaged in interstate commerce should bear their proper proportion of the burdens of the governments under whose protection they conduct their operations; and, taxation on property, collectible by the ordinary means, does not affect interstate commerce otherwise than incidentally, as all business is affected by the necessity of contributing to the support of government.

4.  Taxation—Foreign Steamboat Corporation.—A foreign steamboat corporation doing interstate business in this state, and owning tangible property therein, is liable to the payment of a franchise tax provided by section 4077 of the Kentucky Statutes.

M. M. LOGAN, Attorney General, and JOHN C. DUFFY, Assistant Attorney General, for appellant.

YEAMAN & YEAMAN and J. P. HOBSON & SON for appellee.

OPINION OF THE COURT BY JUDGE MILLER—Reversing.

The only question presented on this appeal is whether a non-resident steamboat company engaged in Kentucky, in interstate as well as intrastate commerce is liable to a franchise tax under the statutes of this state. Section 4077 of the Kentucky Statutes reads, in part, as follows:

"Every railway company or corporation and every other like company, corporation or association, also every other corporation . . . performing any public service, shall in addition to the other taxes imposed upon it by law, annually pay a tax on its franchise to the state, and a local tax thereon to the county, incorporated city, town or taxing district, where its franchise may be exercised."

Sections 4078-4081 make provision for reports to the state auditor by corporations subject to the franchise tax and provide the method of its ascertainment and an apportionment in the cases of foreign corporations and interstate carriers.

The appellee is an Indiana corporation, with its home office at Evansville, Indiana, and operates a steamboat line, carrying freight and passengers on the Ohio and Green rivers between all points from Evansville, Indiana, to Bowling Green and Mammoth Cave in Kentucky. Under protest, the appellee filed with the state auditor the report required by section 4078 of the Kentucky Statutes for the purpose of fixing the franchise tax required by section 4077 from every public service corporation; and, upon this report the State Board of Valuation and Assessment tentatively assessed appellee's franchise, in this state, for 1915 at $30,780.00, and gave appellee the preliminary notice usual in such cases. Thereupon the appellee filed this action to enjoin the board and its members from certifying the tax upon the ground that the company was not liable for a franchise tax because (1) it was engaged in interstate commerce; (2) the collection of a franchise tax would deprive the company of its property without due process of law; and (3) the company carried on its business on the navigable waters of the United States and had no franchise subject to taxation in Kentucky. The circuit court overruled a general demurrer to the petition; and, the defendants standing upon their demurrer, the court granted the relief prayed. The defendants appealed.

The petition and the report to the auditor filed as an exhibit show that the appellee company has a capital stock of $20,000.00; but they fail to show the value of the stock or any price at which it had previously sold, as is required by the statute. They show, however, these facts concerning the appellee's business, for the year ending June 30, 1914:

Gross earnings ............................        $130,966.36
Salaries ...............................................$  9,051.00
Wages .................................................  45,641.78
Dividends ...........................................   4,000.00
Other expenses .................................  57,521.05
Depreciation .......................................   4,000.00
Maintenance of equipment    6,188.80  126,402.63

Net income ......................................        $   4,563.73

.The petition further shows that appellee owns the following tangible property in Kentucky:

Lot and warehouse at Bowling Green,
    worth .........................................................$  2,500.00
Wharf-boat at Owensboro, worth, ...........   1,500.00
Wharf-boat at Cromwell, worth ..............     400.00
Warehouse at Morgantown, worth ........     250.00
Other property, worth ............................  16,000.00

Total tangible property in Kentucky....$20,650.00

It is alleged, however, and must here be treated as true, that the tangible property is used exclusively in the transportation of freight and passengers, or in connection with that business and that 98 per cent. of the company's business in Kentucky for the year 1915, was interstate business.

The net income and the dividends paid for the year aggregated $8,564.73; and that sum capitalized at six per cent. as directed by the statute, would give a total valuation of $142,745.50 to appellee's property; and deducting from this total the tangible property alleged to be worth $20,650.00, the remainder amounting to $122,-095.00 would represent the total value of appellee's franchise, which would have to be apportioned in the manner provided by the statute. See Kentucky Statutes, secs. 4079, 4080, 4081.

The tentative assessment valued the franchise in Kentucky at $30,780.00 and fixed the tax thereon at $169.29. We do not understand the petition to claim that the board of valuation and assessment adopted an erroneous method in arriving at the value of the franchise, or that it was improperly apportioned, or that the amount of the tax is greater than it would owe, if liable. Indeed, un-

der the well established doctrine recognized in this state in Bell's Trustee v. City of Lexington, 120 Ky. 199, and other cases, that no one will be permitted to go into a court of equity to enjoin the collection of an incorrect sum levied as a tax until he has shown himself entitled to the aid of the court by paying so much of the tax assessed against him as he owes and ought to pay, appellee has shown no cause for relief by reason of the amount of the tax enjoined. And, it does not ask relief upon that ground. On the contrary, appellee rests its case wholly upon the proposition that it is not liable for a franchise tax for the reasons above given. So, the question for decision is this: Is the appellee steamboat corporation only liable to assessment on its several pieces of tangible property situated on its line of transportation in this state without reference to its business as a whole, or is it also liable to a franchise tax on its intangible property in this state, as other like corporations.

Appellant relies upon Gloucester Ferry Co. v. Pennsylvania, 114 U. S. 196, and cases like it, in support of its contention that the state cannot impose a tax upon interstate commerce. While we are not at all disposed to question the general legal principle, we cannot agree that the case at bar comes within the rule, for the question still remains: Does the proposed franchise tax impose a burden upon interstate commerce? The Gloucester Ferry Company case did not deal with a franchise tax; it dealt solely with tangible property.

The question before us was carefully considered at length by this court in the recent case of B. & O. S. W. R. Co. v. Commonwealth, 177 Ky. 566. In that case the Commonwealth sought to impose a franchise tax upon a foreign railroad corporation, which owned and operated a railroad in Indiana and Illinois several hundred miles long, and operated as a part of its system only about three miles of road in Kentucky, and owned only one mile of track in Kentucky. It had, however, tangible property in Kentucky in the shape of depot buildings, office furniture, and rolling stock. But its entire business in Kentucky was interstate business. There, as here, it was contended that the imposition of a tax by the state of Kentucky, other than on its property permanently in Kentucky, would be as a tax on interstate commerce in contravention of the federal constitution.

But in sustaining the tax the court was careful to point out that it repeatedly had been decided by this court, and by the supreme court of the United States, that the franchise tax provided by section 4077 of the Kentucky Statutes is nothing more than a tax upon the intangible property of the corporation. Henderson Bridge Co. v. Commonwealth, 99 Ky. 623, affirmed in 166 U. S. 150; Louisville Tobacco Warehouse Co. v. Commonwealth, 106 Ky. 165; Commonwealth v. Cumberland Tel. & Tel. Co., 124 Ky. 535; L. & N. R. R. Co. v. City of Henderson, 154 Ky. 575; Ky. Heating Co. v. City of Louisville, 174 Ky. 142; Adams Express Co. v. Kentucky, 166 U. S. 171.

And, in considering the liability of the railroad company to pay a franchise tax the court said:

"Treating this tax, which for convenience we will call a franchise tax, as a tax on the intangible property of the corporation that has a situs in this state for taxation, we find no obstacle in the way of the state subjecting it to the same rate of taxation to which other property is subjected. The right of the state to subject this character of property to state taxation has been frequently and uniformly upheld by the supreme court of the United States. . . Nor does the fact that this railroad company owns no main lines of track in this state relieve it from liability for this franchise tax. It comes into the state and into its depots situated herein with its trains and engines over the tracks that it has leased from the Kentucky & Indiana Terminal Co., or that it uses under some traffic arrangement with this company. It does business in this state as an operating railroad company, carrying freight and passengers to and from its depots in this state, and owns tangible property located in this state, and by virtue of these facts it comes within the definition of the corporations subject to the tax described in section 4077 of the statutes, and is as much subject to a franchise tax as it would be if it owned the tracks upon which its trains run in this state." 177 Ky. 571, 573.

In support of its conclusion there reached the court cited Postal Telegraph Cable Co. v. Adams, 155 U. S. 688; N. Y. L. E. & W. R. Co. v. Pennsylvania, 158 U. S. 431; Adams Express Co. v. Ohio State Auditor, 165 U. S. 194; Fargo v. Hart, 193 U. S. 490; United States Express Co. v. Minnesota, 223 U. S. 335; St. Louis S. W.

Ry. Co. v. State of Arkansas, 235 U. S. 350; and Adams Express Co. v. Ohio, 166 U. S. 185.

The rule was well and briefly stated in Adams Express Co. v. Ohio State Auditor, *supra,* as follows:

"Although the transportation of the subjects of interstate commerce, or the receipts received therefrom or the occupation or business of carrying it on, cannot be directly subjected to state taxation, yet property belonging to corporations or companies engaged in such commerce may be; and whatever the particular form of the exaction, if it is essentially only property taxation, it will not be considered as falling within the inhibition of the constitution. Corporations and companies engaged in interstate commerce should bear their proper proportion of the burdens of the governments under whose protection they conduct their operations, and taxation on property, collectible by the ordinary means, does not affect interstate commerce otherwise than incidentally as all business is affected by the necessity of contributing to the support of government."

That state laws may incidentally affect interstate commerce, see Hall v. Geiger-Jones Co. ("Blue Sky" cases), 242 U. S. 558.

And, in Fargo v. Hart, 193 U. S. 490, it was further said:

"A state cannot tax the privilege of carrying on commerce among the states. Neither can it tax property outside of its jurisdiction belonging to persons domiciled elsewhere. On the other hand, it can tax property permanently within its jurisdiction although belonging to persons domiciled elsewhere and used in commerce among the states. And when that property is part of a system and has its actual uses only in connection with other parts of the system, that fact may be considered by the state in taxing, even though the other parts of the system are outside of the state."

The franchise tax asserted in B. & O. S. W. R. Co. v. Commonwealth, *supra,* was sustained upon the ground that, being only a property tax collectible by the ordinary means and not exacted as a condition precedent to the right of doing business in the state, it did not affect interstate commerce otherwise than incidentally as all business is affected by the necessity of contributing to the support of the state.

In Philadelphia & T. Mail S. S. Co. v. Pennsylvania, 122 U. S. 336, and in Galveston, H. & T. A. R. Co. v. Texas, 210 U. S. 217, a tax levied directly upon the gross receipts of the company was held invalid because it was a burden upon interstate commerce, and the gross receipts were not used as a mere measure of the tax. And, in W. U. Tel. Co. v. Kansas, 216 U. S. 1, a charter fee graded upon the entire capital stock of a foreign corporation as a condition of doing local business in Kansas, was condemned. These cases fairly represent that class of cases which hold the tax invalid because it is a tax upon interstate commerce.

On the other hand, in United States Express Co. v. Minnesota, 223 U. S. 346, where the reference to the gross receipts of the company in the tax law was only intended fairly to measure a tax upon a subject within the taxing power of the state, the tax was sustained.

In Baltic Min. Co. v. Massachusetts, 231 U. S. 83, where the tax on foreign corporations was measured by the authorized capital stock and was limited to $2,000.00, the court sustained it upon the ground that the authorized capital stock was only used as the measure of the tax, in itself lawful, and without the necessary effect of burdening interstate commerce. And, in Ficklen v. Taxing District, 145 U. S. 1, a tax imposed upon merchandise brokers and measured upon the amount of commissions earned by them, was sustained, although, as was there said, the commissions probably corresponded with the volume of business, although not necessarily proportionate thereto.

In the recent case of Kansas City F. S. & M. R. Co. v. Botkin, 240 U. S. 227, the state of Kansas asserted an annual fee or franchise tax against a domestic railroad corporation, doing an interstate business, graduated upon the amount of its paid up capital stock. In sustaining the tax the court said:

"We take it to be simply a tax on the privilege of being a corporation, on the primary corporate franchise granted by the state. The authority of the state to tax this privilege, or franchise, has always been recognized, and it is well settled that a tax of this sort is not necessarily rendered invalid because it is measured by capital stock which in part may represent property not subject to the state's taxing power. . . .

"It is also manifest that the state is not debarred from imposing a tax upon the granted privilege of being a corporation, because the corporation is engaged in interstate as well as intrastate commerce. . . . And, agreeably to the principle above mentioned, it has never been, and cannot be, maintained that an annual tax upon this privilege is in itself, and in all cases repugnant to the federal power merely because it is measured by authorized or paid-up capital stock. The selected measure may appear to be simply a matter of convenience in computation, and may furnish no basis whatever for the conclusion that the effort is made to reach subjects withdrawn from the taxing authority. We have recently had occasion (Baltic Min. Co. v. Massachusetts, 231 U. S. 68, 83, 58 L. ed. 127, 133, L. R. A.—, —, 34 Sup. Ct. Rep. 15) to emphasize the necessary caution that 'every case involving the validity of a tax must be decided upon its own facts;' and if the tax purports to be laid upon a subject within the taxing power of the state, it is not to be condemned by the application of any artificial rule, but only where the conclusion is required that its necessary operation and effect is to make it a prohibited exaction."

After reviewing the authorities, the court further said:

"In the present case, the tax is not laid upon transactions in interstate commerce, or upon receipts from interstate commerce, either separately or intermingled with other receipts. It does not fluctuate with the volume of interstate business. It is not a tax imposed for the privileges of doing an interstate business. It is a franchise tax,—on the privilege granted by the state of being a corporation,—and while it is graduated according to the amount of paid-up capital stock, the maximum charge is $2,500.00 in the case of all corporations having a paid-up capital of $5,000,000.00, or more. This is the amount imposed in the present case, where the corporations has a capital of $31,660,000.00. We find no ground for saying that a tax of this character, thus limited, is in any sense a tax imposed upon interstate commerce."

See also Lusk v. Botkin, 240 U. S. 236, upholding the Kansas statute above referred to which imposed an annual tax upon foreign railway corporations doing business in Kansas, measured by that proportion of its capital stock which was devoted to its Kansas business.

In Kansas City M. & B. R. Co. v. Stiles, 242 U. S. 111, the court approved the Botkin case, saying:

"It is urged that this tax is void because it undertakes to tax property beyond the jurisdiction of the state, and imposes a direct burden upon interstate commerce. Objections of this character were so recently discussed, and the previous cases in this court considered, in Kansas City Ft. S. & M. R. Co. v. Botkin, 240 U. S. 227, 60 L. ed. 617, 36 Sup. Ct. Rep. 261, that it would be superfluous to undertake extended discussion of the subject now. In that case, after a full review of the previous decisions in this court, it was held that each case must depend upon its own circumstances, and that while the state could not tax property beyond its borders, it might measure a tax within its authority by capital stock which in part represented property without the taxing power of the state. As to the objection based upon the due process clause of the constitution, we think that principle controlling here. There is no attempt in this case to levy a property tax; a franchise tax within the authority of the state is in part measured by the capital stock representing property owned in other states."

The cases upon the subject are collected in a note in Ann. Cas. 1916-C, 1248. The rule distinguishing between the subject and the measure of the tax was recognized as established in Flint v. Stone Tracy Co. 220 U. S. 107, Ann. Cas. 1912-B, 1312.

The conclusion here reached is supported by the recent decisions in Crew Levick Company v. Pennsylvania, 245 U. S. ——, and Looney v. Crane Co., 245 U. S. ——. In the Crew Levick Company case the state of Pennsylvania undertook to impose an annual mercantile license tax of three dollars upon each wholesale merchant, and also one-half mill additional on each dollar of gross business transacted annually, including foreign business. It is quite evident that the amount of the tax directly fluctuated with the amount of foreign business, and was invalid under the authorities above cited; and in so holding the supreme court of the United States said it bore no semblance of a property tax, or a franchise tax in the proper sense, but operated to lay a direct burden upon every foreign transaction in commerce by withholding, for the use of the state, a part of every dollar received in such transactions.

, In the Crane Company case it appeared that Texas exacted from every foreign corporation a permit fee to do business in the state; and, further, from those corporations that had obtained a permit, it exacted a franchise tax based directly upon capital, surplus, and undivided profits.

In holding both taxes invalid the court said:

"It may not be doubted under the case stated that, intrinsically and inherently considered, both the permit tax and the tax denominated as a franchise tax were direct burdens on interstate commerce, and moreover, exerted the taxing authority of the state over property and rights which were wholly beyond the confines of the state, and not subject to its jurisdiction, and therefore constituted a taking without due process."

Clearly the permit tax was indefensible under the authorities heretofore cited; but, it was attempted to sustain the franchise tax, when considered separately. But the court overruled the contention for two reasons. First, it held that from the character of the subject matter and the manner in which it was dealt with the two taxes were interdependent, and the unconstitutionality of the one invalidated the other; and secondly, aside from that view, the provisions of the franchise tax were so clearly intended to reach all activities and property of the corporation, although in part situated without the state, that the franchise statute, when separately considered, must be considered invalid as imposing a tax upon property not within the jurisdiction of the state of Texas.

In the case at bar, however, extraterritorial taxation is not attempted. It will thus be seen that both cases are in entire harmony with the previous rulings of the supreme court of the United States upon this subject.

Under these authorities we conclude that the tax under consideration is not an unconstitutional burden upon interstate commerce. It is not imposed as a condition precedent to the doing of business; it is not a tax upon the gross receipts of the company, which are, on the contrary, merely used as a factor in measuring the value of the franchise; and all corporations both domestic and foreign are treated alike.

The defenses that the tax deprives the company of its property without due process of law and that the state is without authority to tax the company because its

business is conducted upon the navigable waters of the United States are without merit under the decisions in the Botkin case and similar cases above cited.

Commonwealth v. Lee Line Co., 159 Ky. 476, relied upon by appellee to sustain the decision of the circuit court, is not in conflict with the conclusion here reached. In that case the company owned no tangible property in Kentucky and was not included within the terms of the statute.

A state cannot tax property beyond its boundary; and if a foreign corporation owns or uses no real property or tangible personal property in the state in connection with its interstate business it has no franchise that can be taxed. This question was passed upon in B. & O. S. W. R. Co. v. Commonwealth, *supra,* where the court said:

"It is the ownership of real property or tangible personal property in this state or the use of such property under a lease or traffic arrangement by the carrier that comes into this state in the regular course of its business, and the doing of business here, that subjects it to the payment of a franchise tax. When these conditions exist, it is not material, so far as the liability for this tax is concerned, whether it comes into this state on its own lines or over the lines of some other company; nor is it material what traffic or other arrangements it has with the company over whose lines it comes here. James, Auditor v. Kentucky Refining Co., 132 Ky. 353; Morrell Refrigerator Car Co. v. Commonwealth, 128 Ky. 447; Jefferson County v. Board of Valuation, etc., 117 Ky. 531."

We have refrained from considering the question of the correctness of the amount of the tax enjoined and express no opinion upon that subject, for the reason that the case has not been prepared or briefed upon that question; and, it does not require a decision of that question. We only decide that under the statute and the showing made by the petition the appellee is liable for a franchise tax, and that the demurrer to the petition should have been overruled.

Judgment reversed.