COMMONWEALTH ex rel. REEVES v. AMERICAN BARGE LINE CO.

COMMONWEALTH ex rel. REEVES v. MISSISSIPPI VALLEY BARGE LINE CO.

COMMONWEALTH ex rel. REEVES v. OHIO RIVER CO.

COMMONWEALTH ex rel. REEVES v. UNION BARGE LINE CORP.

Court of Appeals of Kentucky.

Dec. 17, 1952.

J. D. Buckman, Jr., Atty. Gen., Hal Williams, Asst. Atty. Gen., Frank A. Logan, Louisville, for appellant.

James W. Stites, Louisville, for appellees.

COMBS, Justice.

The single question presented in these four cases is whether the Commissioner of Revenue of the Commonwealth may lawfully compromise with a taxpayer a disputed and unlitigated claim for taxes.

The appellees are four barge line companies operating towboats and barges on the Ohio River and other inland waterways. It is stated in their brief that none of the companies operates on a regular schedule between fixed termini and only a small proportion of their business is done with Kentucky ports.

For a number of years the Commonwealth and various taxing districts have endeavored, with varying success, to tax the boats and barges of these companies which operate on the Ohio River. Commonwealth v. Lee Line Co., 159 Ky. 476, 167 S.W. 409; Bosworth, Auditor v. Evansville & Bowling Green Packet Co., 178 Ky. 716, 199 S.W. 1059; American Barge Line Co. v. Board of Supervisors, 246 Ky. 573, 55 S.W.2d 416; Reeves v. Island Creek Fuel & Trans. Co., 313 Ky. 400, 230 S.W.2d 924.

The facts of the cases are admitted and were submitted under section 637 of the Civil Code of Practice. It is stipulated that the Commissioner of Revenue has agreed to accept and the companies have agreed to pay, subject to Court approval, a total of $210,888.60, with interest after December 1, 1952, in full satisfaction of their tax liability prior to 1951. The method by which the amount was determined, and a breakdown of the amount as between the four companies, is set out in the briefs. The record affirmatively shows the Commissioner's acceptance of the compromise offer is predicated upon an investigation of the facts and consideration of the factors involved.

The trial court at first approved the proposed settlement, but, on November 11, 1952, we reversed the judgment. No opinion was written but it was stated in the mandate "The only compromise the parties could enter into would be concerning the possible tax liability of defendant for franchise taxes." The basis for the decision was our belief the Commissioner of Revenue could lawfully accept. the compromise offer, provided the companies are subject to a franchise tax; but in the event the companies are not subject to a tax on their franchise but are vulnerable on ad valorem tax basis, a compromise of the tax liability should not be made by the Commissioner without the political subdivisions, which would be the recipients of the tax, either agreeing to the compromise or being parties to the suit.

On return of the case to the trial court a stipulation was filed which shows "The Commissioner and Department of Revenue have heretofore made an administrative determination that the defendant during the years 1946–50 was a 'franchise company' within the meaning of KRS 136.120." The trial court held that the stipulation added nothing to the case and declined to approve the settlement apparently on the theory that our decision on the former appeal precluded it from doing so. We think the additional stipulation puts a different complexion on the case. Under the stipulation we may assume, for the purpose of this case, that the companies were "franchise companies" during the period for which their tax liability is proposed to be settled. Although it is argued by the parties that the Commissioner has authority to settle the claim regardless of the theory upon which the tax liability is based, it seems to us there should be a distinction as a matter of policy, if not as a matter of law.

KRS 134.380(1) vests the Commissioner of Revenue with authority to "institute and prosecute any action or proceeding for the collection of delinquent taxes and the assessment of omitted property." But under KRS 136.120(4) the Department of Revenue has the *"sole* power to value and assess all of the property, including the franchise, of every corporation * * *." (Emphasis ours.) The nature of a franchise tax makes it essential that the assessment be left in the hands of the Commissioner of Revenue. This is because the taxing subdivisions do not have available to them the overall information or facilities to make a comprehensive assessment of the franchise value. Legislative recognition of the problem is indicated by the fact the Commissioner has been delegated the sole power to assess franchise corporations.

Having made an administrative determination that the companies are subject to a franchise tax, the Commissioner, beyond question, could assess the property of these companies under KRS 136.120 at a figure which would produce the end amounts here offered in settlement by the taxpayers; and so long as he acted in good faith and the taxpayer did not complain, his acts could not be impeached. Cf. Commonwealth ex rel. Alexander v. Bacon, 126 Ky. 30, 102 S.W. 839. Since he could accomplish the identical result through the process of assessment, we know of no valid reason why he cannot properly proceed as he has done here. Although section 52 of the Constitution prohibits "extinguishing, in whole or in part, the indebtedness or liability of any corporation or individual to this Commonwealth" this Court has consistently held that there may be a good faith settlement of an unliquidated claim. Cole v. Burton, City Attorney, 313 Ky. 557, 232 S.W.2d 838, 15 A.L.R.2d 1356; Commonwealth v. Wood, 289 Ky. 649, 159 S.W.2d 403; Roberts v. Fiscal Court of McLean County, 244 Ky. 596, 51 S.W.2d 897; Steele v. Taylor, for Use and Benefit of Laurel County, 272 Ky. 11, 113 S.W.2d 423. Clearly, the claim here is unliquidated and the parties propose to make a good faith settlement.

The facts of the case are unusual in that the parties desire to dispose of whatever tax liability the companies might have prior to 1951 without establishing any precedent or principle which will govern the assessment or collection of subsequent taxes. The Legislature has clothed the Commissioner of Revenue, the chief tax authority of the Commonwealth, with wide discretion in such matters. Since he has made an affirmative finding that for the years here involved the companies are subject to a franchise tax which he has sole power to assess, we think the proposed settlement should be approved. Our approval is subject, however, to the express provision that this decision, based on the unique circumstances of this case, shall not be considered as binding the parties to this action in the assessment or collection of subsequent taxes, or as modifying any of the principles of taxation heretofore laid down by this Court.

We have examined the judgment tendered to the lower court and incorporated as part of the record and are of the opinion it correctly adjudicates the rights of the parties.

The judgment is reversed for consistent proceedings.

CAMMACK, C. J., not sitting.