## ASHLAND OIL & REFINING CO. v. DEPARTMENT OF REVENUE et al.

Court of Appeals of Kentucky.

March 20, 1953.

E. L. McDonald and Angus W. McDonald, Lexington, for appellant.

J. D. Buckman, Jr., Atty. Gen., and Hal Williams, Asst. Atty. Gen., for appellee.

DUNCAN, Justice.

The sole question presented on this appeal is whether the boats and barges owned and operated by appellant, Ashland Oil and Refining Company, have a taxable situs in Boyd County, in which is located appellant's principal office, or whether the value of such property may be taxed on a pro rata basis in a number of Kentucky counties through which the boats and barges pass.

In May, 1951, upon recommendation of the Department of Revenue, the Greenup County Tax Commissioner assessed against appellant the value of an undivided portion of its fleet of boats and barges based upon the ratio between the number of miles of river traveled by taxpayer's fleet bordering Greenup County and the total number of such miles bordering other counties in Kentucky. Similar action was taken by some twenty-six other counties bordering the streams traveled by taxpayer's vessels. Unsuccessful appeals from the assessment of the tax commissioner were prosecuted by appellant to the Board of Supervisors, thence to the Kentucky Tax Commission, and finally to the Greenup Circuit Court. Upon the appeal here, it is insisted that the vessels had not acquired a permanent tax-

able situs in any county other than Boyd County; that the property has been properly listed with and assessed by the tax commissioner of Boyd County; and that neither Greenup nor any other county except Boyd has jurisdiction to tax the property or any part thereof.

Appellant is a domestic corporation, with its principal office and place of business at Ashland, Boyd County, Kentucky. Since 1924, it has used boats and barges on the Ohio and Mississippi Rivers to transport its crude oil and refined products. It now transports its crude oil from as far south as New Orleans and its refined products to as far north as Pittsburg. None of the vessels are permanently in Greenup County, and no stops are made in that county for the purpose of loading or unloading. The only time the equipment is within the limits of the county is when such vessels as ply down river from Boyd County pass that portion of Greenup County that borders on the Ohio River. Appellant transports its own products exclusively and is not a contract or common carrier.

As of January 1, 1951, and as of the appropriate assessing date in each of the preceding years since 1924, appellant listed all of its boats and barges for assessment and taxation with the county tax commissioner of Boyd County, and each year until 1951 has paid the ad valorem tax thereon to the sheriff of Boyd County. It has at no time listed any part of its vessels in Greenup County.

Historically, tangible personal property in Kentucky that has not acquired a permanent situs elsewhere is taxed in the county of the owner's domicile. Gates v. Barrett, 1881, 79 Ky. 295; Wren v. Boske, 1903, 72 S.W. 279, 24 Ky.Law Rep. 1780; Langdon-Creasy Co. v. Trustees of Owenton Common School District, 1903, 116 Ky. 562, 76 S.W. 381. In the Wren case, the taxpayer resided in Scott County but kept his livestock in Kenton County. This Court held that Scott County was the taxable situs although the property was never physically located in that county. In the Langdon-Creasy case, the taxpayer was a grocery company having its principal office in Cov-

ington, Kenton County, Kentucky, with retail grocery stores located in various other counties of the State. It was there held that the stock of goods located in the various retail stores in other counties should be assessed in the county of the taxpayer's residence.

Following the Wren and Langdon-Creasy cases, the General Assembly, in order to correct the inequitable situation then existing, provided by Acts of 1906, page 90, chapter 22, that tangible personal property should be listed and the tax paid thereon in the county, municipality, and taxing district, where the same had established a taxable situs "based on the actual situation of the property." The 1906 statute was similar to our present KRS 132.220(1), which requires the listing of property in the county "where it is located". In construing the statute, this Court has consistently held that in order for tangible personal property to have a taxable situs in a county different from the domicile of its owner, such property must be permanently located at the place where it is sought to be taxed. Hill v. Caldwell, 134 Ky. 99, 119 S.W. 749; Semple v. Commonwealth, 181 Ky. 675, 205 S.W. 789; Cumberland Pipe Line Co. v. Commonwealth, 258 Ky. 90, 79 S.W.2d 366.

Admittedly, appellant's boats and barges were not permanently located in Greenup County as measured by the standard of "permanency" established by the authorities which we have cited. However, the Department of Revenue insists that these cases have only historic interest in view of what is characterized as a new legal concept which has arisen in recent years concerning the taxable situs of such property as is involved in this case. It is asserted that this new concept was applied by this Court in Reeves v. Island Creek Fuel & Transportation Co., 313 Ky. 400, 230 S.W. 2d 924, 927.

For the purpose of this appeal, it is not necessary to consider the status of such property as is involved here with respect to the taxing authority of the various States through which the property passes. It is only necessary to determine whether or

not any portion of appellant's boats and barges are located in Greenup County within the requirements of KRS 132.220(1).

In the Island Creek case, the taxpayer was a Maine corporation which operated two towboats and barges on the Ohio River, principally between Huntington, West Virginia, and Cincinnati, Ohio. The towboats and barges had never been in the domiciliary State of Maine and the taxpayer had never paid any ad valorem tax in either the State of its domicile or any other State. The principal question decided was that the continuity and consistency of the presence of the vessels in Kentucky waters were sufficient to establish a tax situs in Kentucky. Such situs, however, was of only 94.6% of the value of the property, that being the aliquot part of the route regularly traveled in Kentucky between the taxpayer's ports in Huntington and Cincinnati. Having determined that Island Creek's boats and barges had a taxable situs in Kentucky, and there being no single county in Kentucky having superior rights over any other county, the Court was faced with the necessity of providing a formula for dividing jurisdiction among the several taxing districts which the river route bordered. This it did on the basis of the ratio which the number of miles bordering each county bore to the total number of miles in Kentucky. This solution was reached as the only workable and convenient method of allocating the tax where no one county had established or could claim superior rights as against other taxing districts, and was justified by the Court's drawing an analogy to the numerous Supreme Court cases which upheld the right of the individual States to tax the aliquot portion of personal property passing through those States in more or less regular fashion. We think the Island Creek opinion clearly indicates an intention to limit this method of apportionment to those cases where it is impossible to assign a situs at large to the property in its entirety. There, it was said:

"Following this concept there seems to have evolved the idea of estimating, by some reasonable method of aliquot division, the situs of any particular part of a mass of property whenever the mass is being used in *interstate business and it is impossible to assign a situs at large to it in entirety."* Emphasis ours.

■ In considering the extent to which the settled rule in Kentucky was overruled by the Island Creek case, it is well to keep in mind the rule that an opinion will not be construed as overruling all former precedents and establishing a principle never before recognized unless expressed in plain and explicit terms. 14 Am.Jur., page 345, section 129, Courts. In the present case, it is possible under well-settled rules to assign a situs at large to appellant's property in its entirety. This situs is the domicile of the taxpayer.

■ There is no statutory authorization for allocating tangible personal property of a resident taxpayer among several counties and taxing districts where the property has acquired no permanent situs in a county other than the residence of the taxpayer, except with respect to a franchise company under the provisions of KRS 136.120 and 136.170. If an apportionment method is desirable to the time-honored procedure which has been followed in the past, it is a matter for legislative rather than administrative or judicial correction.

The fact that some of appellant's vessels are moving in interstate commerce is entirely immaterial. The problem would be no different if the vessels never left Kentucky. We are concerned only with a Kentucky taxing unit assessing property in Kentucky. Although dealing with property sometime used in interstate commerce, we do not reach the question of interstate taxation. However sound the new concept may be in the field of interstate taxation, we are unwilling in the absence of statutory authority to apply it to intrastate or intercounty taxation. In the former situation, there is no peg in any of the counties in the taxing State upon which to hang the tax situs of property owned by a nonresident. In the latter situation, when the domicile of the taxpayer is in this State, there is a peg fixed by law upon which the tax situs must be hung. In the interstate case, there is no legislative body which

can control the incidence of the tax as between several States. In the intrastate case, the General Assembly can and has done so.

For the reasons indicated, the judgment is reversed for proceedings consistent with this opinion.