**MARINA PROPERTY SERVICES, INC., Appellant,**

v.

**Rodney G. OWENS, Property Valuation Administrator Russell County, Kentucky, Larry Bennett, Sheriff, Russell County, Kentucky; James Heston, Property Valuation Administrator, Lawrence County, Kentucky, Appellees.**

No. 2000–CA–000055–MR.

Court of Appeals of Kentucky.

Nov. 21, 2001.

Rehearing Denied Jan. 18, 2002.

Leslie Rosenbaum, Lexington, KY, for appellant.

Howard Kent Cooper, Jamestown, KY, for appellees, Rodney G. Owens and Larry Bennett.

Kimberly H. Compton, Louisa, KY, for appellee, James Heston.

Before EMBERTON, GUIDUGLI and JOHNSON, Judges.

*OPINION*

GUIDUGLI, Judge.

Marina Property Services, Inc. (MPS), appeals from an opinion and order of the Russell Circuit Court entered December 8, 1999, which granted summary judgment in favor of Rodney G. Owens in his capacity as Property Valuation Administrator of Russell County (Owens), Larry Bennett in his capacity as Sheriff of Russell County, and James Heston (Heston) in his capacity as Property Valuation Administrator of Lawrence County. We affirm.

MPS, an Ohio corporation authorized to do business in Kentucky, owns a flotilla of 115 houseboats which it leases to State Dock, Inc. Because the houseboats are covered by certificates of documentation

issued by the United States Coast Guard, they are not required to be registered in Kentucky pursuant to KRS 235.070(2)(f). State Dock, Inc., leases the houseboats to recreational users over the course of a seven-month houseboat season from two locations on Lake Cumberland—State Dock at Lake Cumberland State Park and Alligator # 1 Dock in Eli, Kentucky. Both of these locations are in Russell County. During the winter months, the houseboats are stored, repaired, and serviced at the State Dock and Alligator # 1 Dock. Lake Cumberland is bordered by Wayne, Russell, Pulaski, Clinton, McCreary, Laurel, and Whitley Counties. It is undisputed that once the houseboats are leased from either location they are operated throughout the entirety of Lake Cumberland and that the operation of the houseboats is not restricted to Russell County. MPS maintains a registered agent in Lawrence County. Aside from being the location of MPS's registered agent, Lawrence County has no actual physical contact with the houseboats.

In 1998, MPS asked Heston to assess the houseboats and issue a tax bill for 1998. Heston refused to do so and forwarded the bill to Owens. Owens assessed the value of the houseboats at $4,800,000 and forwarded a tax bill to MPS based on that valuation.

After receiving the Russell County tax bill, MPS filed a complaint alleging that it should be permitted to list the houseboats in Lawrence County for tax purposes. On December 8, 1999, the trial court granted summary judgment in favor of the Appellees, stating:

> MPS contends ... that KRS 186.020 is the governing statute regarding the question of taxation of the houseboats. That statute, as cited by MPS, provides that if an owner of a motor vehicle *is other than an individual* and resides

within the Commonwealth of Kentucky, the motor vehicle shall be registered with the County Clerk of the county in which the owner resides *or* the county in which the motor vehicle is principally operated. (Emphasis supplied by MPS). The defendants/respondents contend that the applicable statute is KRS 132.220(12) which states in pertinent part:

> "... It shall be the duty of all persons owning or having any interest in any intangible personal property or tangible personal property taxable in this state to list or have listed the property with the property valuation administrator of the county of taxable *situs* or with the cabinet between January 1 and May 15 in each year, except as otherwise prescribed by law." (Emphasis added).

This Court is of the opinion that KRS 132.220(1) is controlling in this action.

. . . .

[*Ashland Oil & Refining Co. v. Department of Revenue*, Ky., 256 S.W.2d 359 (1953) ] coupled with the current statute, KRS 132.220(1) indicates that the property subject to taxation must be permanently located at the place where it is sought to be taxed. Situs is defined in Black's Law Dictionary Fifth Edition, 1979, as follows:

> "Situation; location; e.g. location or place of crime or business. Site; position; the place where a thing is considered, for example, with reference to jurisdiction over it, or the right or power to tax it. It imports fixedness of location."

A realistic definition of permanency is set forth in *Reeves v. Island Creek Fuel & Transportation Co.*, 313 Ky. 400, 404 and 405, 230 S.W.2d 924, 927 (1950), where this language ensues:

"The idea of permanency, with respect to personal property, seems to generally be that for such property to acquire a taxable situs, it must have a more or less permanent location as distinguished from a transient or temporary one. However, permanency in the sense that it must be fixed like real property is not essential to the establishment of a taxable situs for personal property. It seems to be sufficient, when in the ordinary course of business, that property is present and being used and employed with a consistent continuity and not spasmodically and temporarily."

This Court concludes as a matter of law that in spite of the semantical injection of whether the docks are located on water owned by the Corps of Engineers of the United States of America, the plain truth is that docks and the facility where the boats are repaired are all within the confines of Russell County, Kentucky. This Court will not indulge in an oxymoron assumption that the houseboats are analogous to an automobile.

. . . .

If the reasoning used by MPS was adopted, no barrier would be in place to prevent MPS from forum shopping for favorable tax rates. If Lawrence County increased its base tax rate, MPS could then move its Kentucky corporate telephone office to Robertson County or Ballard County. An amorphous hopping to counties where lower tax rates exist would become a reality.

MPS contends that the trial court erred in granting summary judgment in favor of the Appellees. Having reviewed the parties' arguments and the applicable law, we disagree.

■ The trial court correctly found that KRS 132.220(1) is the applicable statute and that KRS 132.488 and KRS 235.050(1), on which MPS bases its arguments, do not apply. Under KRS 132.488, the tax assessment of all motorboats is to be "administered in the same manner and according to the same procedures provided for motor vehicles in KRS 132.487." Pursuant to KRS 342.187, the ad valorem tax system for motor vehicles is to be "designed to allow the collection of . . . ad valorem taxes due on each motor vehicle at the time of *registration* of the motor vehicle by the party charged with issuing the *registration* [emphasis added]." Even more specifically, KRS 132.227 provides that the taxable situs of a motor vehicle is presumed to be its county of registration. However, the houseboats at issue are exempted entirely from registration by KRS 235.070(2)(f) as they are covered by certificates of documentation issued by the United States Coast Guard. As there is no county of registration, the taxable situs cannot be determined by application of the motor vehicle assessment statutes.

Nor can we determine the taxable situs of the houseboats by application of KRS 235.050(1), which provides in pertinent part:

[B]efore the owner or operator of each motorboat required to be registered . . . may operate it or permit its operation upon the waters of this state, the owner shall apply for title and registration to the county clerk of the county in which he resides, except, if the motorboat is to be operated principally in a county other than the county of the owner's residence the owner may apply for title and registration to the county clerk of the county in which the motorboat is to be principally operated.

Once again, the houseboats are not required to be registered, so this statute is also inapplicable for purposes of determining taxable situs. Thus, we are left with

KRS 132.220(1), which provides in pertinent part:

It shall be the duty of all persons owning or having any interest in . . . tangible personal property taxable in this state to list or have listed the property with the property valuation administrator of the county of taxable situs[.]

Having held that the trial court properly found KRS 132.220(1) to be the applicable statute, the question then becomes whether the trial court erred in declaring Russell County to be the taxable situs of the houseboats.

■ As we noted, the trial court based its decision as to the taxable situs of the houseboats on the *Ashland* and *Reeves* cases. *Ashland* set forth the history of taxable situs law prior to *Reeves:*

Historically, tangible personal property in Kentucky that has not acquired a permanent situs elsewhere is taxed in the county of the owner's domicile. *Gates v. Barrett,* 1881, 79 Ky. 295; *Wren v. Boske,* 1903, 72 S.W. 279, 24 Ky.Law Rep. 1780; *Langdon–Creasy Co. v. Trustees of Owenton Common School District,* 1903, 116 Ky. 562, 76 S.W. 381. In the *Wren* case, the taxpayer resided in Scott County but kept his livestock in Kenton County. This Court held that Scott County was the taxable situs although the property was never physically located in that county. In the *Langdon–Creasy* case, the taxpayer was a grocery company having its principal office in Covington, Kenton County, Kentucky, with retail grocery stores located in various other counties of the State. It was there held that the stock of goods located in the various retail stores in other counties should be assessed in the county of the taxpayer's residence.

Following the *Wren* and *Langdon–Creasy* cases, the General Assembly, in order to correct the inequitable situation then existing, provided by Acts of 1906, page 90, chapter 22, that tangible personal property should be listed and the tax paid thereon in the county, municipality, and taxing district, where the same had established a taxable situs "based on the actual situation of the property." The 1906 statute was similar to our present KRS 132.220(1), which requires the listing of property in the county "where it is located". In construing the statute, this Court has consistently held that in order for tangible personal property to have a taxable situs in a county different from the domicile of its owner, such property must be permanently located at the place where it is sought to be taxed. [citations omitted]

*Ashland,* 256 S.W.2d at 360.

In *Reeves,* the defendant coal company was a subsidiary of a Maine corporation. It operated two towboats and a fleet of barges between Huntington, West Virginia, and Cincinnati, Ohio, which it used to transport coal. The defendant's principal place of business was Huntington, but it maintained docking facilities in Cincinnati and mooring facilities in Campbell County, Kentucky. Neither the towboats nor the barges had ever been in Maine, and the defendant never paid ad valorem taxes on any of the vessels. It appears that several Kentucky counties bordering the Ohio River sought to collect ad valorem taxes on the towboats and barges. The question before the Court was whether the vessels had acquired a taxable situs in Kentucky for ad valorem taxation purposes. In holding that the vessels had acquired a taxable situs within the state, the Court stated:

Appellee strongly insists that these tugs and barges have not acquired a taxable situs in Kentucky in that they are only transiently present and that the

essential element of permanency is lacking. It is insisted that there are no termini; no particular destination or regular port of call in Kentucky; and that the time spent by appellee's barges and tugs in transit through Kentucky waters is sporadic and irregular. In one of the briefs it is said: "To acquire such a situs the boats and barges must be permanently situated in the non-domiciliary State and permanently means continuously throughout the year, not a fraction thereof, whether days or weeks." True, the factors above mentioned do enter into the determination of taxable situs. The idea of permanency, with respect to personal property, seems generally to be, that for such property to acquire a taxable situs, it must have a more or less permanent location as distinguished from a transient or temporary one. However, permanency in the sense that it must be fixed like real property is not essential to the establishment of a taxable situs for personal property. It seems to be sufficient, when in the ordinary course of business, that property is present and being used and employed with a consistent continuity and not spasmodically and temporarily.

Following this concept there seems to have evolved the idea of estimating, by some reasonable method of aliquot division, the situs of any particular part of a mass of property whenever the mass is being used in interstate business and it is impossible to assign a situs at large to it in entirety. Such method of determining the share of an interstate mass has been applied to a fleet of steamships, lines of railroad, and the mass of railroad cars. [citations omitted]

*Reeves*, 230 S.W.2d at 927.

■ Some three years later, the Court rendered its decision in *Ashland* in which it further explained its decision in *Reeves*. In *Ashland*, the defendant company maintained its principal place of business in Boyd County and operated a fleet of boats and barges on the Ohio and Mississippi rivers. In 1951, Greenup County "assessed against [Ashland] the value of an undivided portion of its fleet ... based upon the ratio between the number of miles of river traveled by the taxpayer's fleet bordering Greenup County and the total number of such miles bordering other counties in Kentucky." *Ashland*, 256 S.W.2d at 359. The Court framed the issue as follows:

> The sole question presented ... is whether the boats and barges operated by [Ashland] have a taxable situs in Boyd County ... or whether the value of such property may be taxed on a pro rata basis in a number of Kentucky counties through which the boats and barges pass.

*Id.* In arguing that Ashland's fleet could be taxed on a pro rata basis, the Department of Revenue relied on *Reeves* and asserted that the fleet was not permanently located in Boyd County. The Court disagreed.

> In the [*Reeves* ] case ... [t]he principal question decided was that the continuity and consistency of the presence of the vessels in Kentucky waters were sufficient to establish a tax situs in Kentucky. Such situs, however, was of only 94.6% of the value of the property, that being the aliquot part of the route regularly traveled in Kentucky between the taxpayer's ports in Huntington and Cincinnati. Having determined that Island Creek's boats and barges had a taxable situs in Kentucky, and there being no single county in Kentucky having superior rights over any other county, the Court was faced with the necessity of providing a formula for dividing jurisdiction among the several taxing districts

which the river route bordered. This it did on the basis of the ratio which the number of miles bordering each county bore to the total number of miles in Kentucky. This solution was reached as the only workable and convenient method of allocating the tax where no one county had established or could claim superior rights as against other taxing districts, and was justified by the Court's drawing an analogy to the numerous Supreme Court cases which upheld the right of the individual States to tax the aliquot portion of personal property passing through those States in more or less regular fashion. We think the *Reeves* opinion clearly indicates an intention to limit this method of apportionment to those cases where it is impossible to assign a situs at large to the property in its entirety. There, it was said:

> "Following this concept there seems to have evolved the idea of estimating, by some reasonable method of aliquot division, the situs of any particular part of a mass of property whenever the mass is being used in *interstate* business *and it is impossible to assign a situs at large to it in entirety.*" (Emphasis ours).

In considering the extent to which the settled rule in Kentucky was overruled by the [*Reeves*] case, it is well to keep in mind the rule that an opinion will not be construed as overruling all former precedents and establishing a principle never before recognized unless expressed in plain and explicit terms. [citation omitted] In the present case, it is possible under well-settled rules to assign a situs at large to appellant's property in its entirety. This situs is the domicile of the taxpayer.

There is no statutory authorization for allocating tangible personal property of a resident taxpayer among several coun-ties and taxing districts where the property has acquired no permanent situs in a county other than the residence of the taxpayer, except with respect to a franchise company under the provisions of KRS 136.120 and 136.170. If an apportionment method is desirable to the time-honored procedure which has been followed in the past, it is a matter for legislative rather than administrative or judicial correction.

*Ashland,* 256 S.W.2d at 361. Thus, unless it is impossible to assign a taxable situs to the entirety of the property sought to be taxed, its taxable situs is the domicile of the taxpayer.

 Based on the foregoing analysis of *Ashland* and *Reeves,* it is clear that the houseboats have acquired a taxable situs in Russell County. *Reeves* makes it clear that in order to establish a taxable situs in a particular location, the property must have a more or less permanent location in the area in which it is sought to be taxed. As *Reeves* illustrates, the permanency test is satisfied if the property is present in the area "and being used and employed with a constant continuity and not spasmodically and temporarily." *Reeves,* 230 S.W.2d at 927. In this case, the houseboats are docked, stored, rented, repaired, and serviced in Russell County. The houseboats have no physical contact with Lawrence County. While they are not operated entirely within Russell County, we believe that this factor does not require a finding that the taxable situs is Lawrence County.

We agree with MPS that *Ashland* appears to hold that the taxable situs of transient personal property is the domicile of the taxpayer. However, a close reading of *Ashland* disproves this argument. The *Ashland* opinion ruled that the aliquot division of taxation among the several counties in which the boats were operated ap-

plies only "where it is impossible to assign a situs at large to the property in its entirety." *Ashland*, 256 S.W.2d at 361. In *Ashland*, the court found that *Reeves* had no application because it was able to find that the boats had a taxable situs in Boyd County, which happened to be the domicile of the taxpayer. There is nothing in *Ashland* which requires transient personal property to be taxed only in the domicile of the taxpayer.

The opinion and order of the Russell Circuit Court is affirmed.

ALL CONCUR.