**DEPARTMENT OF REVENUE, FINANCE AND ADMINISTRATION CABINET, COMMONWEALTH OF KENTUCKY, Appellant**

v.

**CHEGG, INC., Appellee**

**NO. 2014–CA–001922–MR**

Court of Appeals of Kentucky.

RENDERED: MARCH 4, 2016; 10:00 A.M.

Discretionary Review Denied by Supreme Court September 15, 2016

BRIEF FOR APPELLANT: Richard W. Bertelson, III, Frankfort, Kentucky.

BRIEF FOR APPELLEE: Mark F. Sommer, Jennifer Y. Barber, Louisville, Kentucky.

BEFORE: CLAYTON, KRAMER, AND STUMBO, JUDGES.

## OPINION

KRAMER, JUDGE:

The Department of Revenue, Finance and Administration Cabinet, Commonwealth of Kentucky ("Revenue") appeals from an opinion and order of the Franklin Circuit Court reversing a decision of the Kentucky Board of Tax Appeals which, in turn, denied appellee, Chegg, Inc., tax exemptions specified in Kentucky Revised Statutes (KRS) 132.097 and 132.099 for the years of 2009 and 2010. We affirm.

The circuit court's opinion and order under review aptly summarizes the undisputed facts and much of the procedural posture of this matter:

Chegg, Inc. (hereinafter "Chegg"), is a publicly traded California domiciled Delaware corporation, qualified to do business within the Commonwealth of Kentucky. Chegg operates the nation's leading network for students and online college textbook rentals. In February 2010, Chegg invested $27.3 million in its Kentucky venture and opened a 611,000 square-foot facility in Shepherdsville, Bullitt County as the sole site for its United States warehousing and distribution operations. Chegg's decision to open its facility in Kentucky was informed by financial and tax incentives offered to the distribution and warehousing industry in Kentucky as well as the proximity to and logistical advantage of the UPS WorldPort in Louisville.

This is a tangible personal property tax appeal concerning tax years 2009 and 2010, and the appeal turns on the issue of whether Kentucky's warehouse/distri-

bution center exemptions provided for in KRS 132.097 and KRS 132.099 apply to Chegg's textbooks, which are stored in its Bullitt County warehouse center and are shipped outside of Kentucky within six months. Chegg has appealed to this Court, seeking judicial review of Order No. K–24470 from the Kentucky Board of Tax Appeals (hereinafter "KBTA"), which upheld Final Ruling No., issued by the Kentucky Department of Revenue (Hereinafter "Revenue").

On September 13, 2010, Chegg received a Notice of Tax Due for its 2009 tax year in the sum of $86,337.89, which reflected adjustments made by Revenue to Chegg's 2009 declared tangible personal property listed as "Goods Stored in Warehouse/Distribution Center." Chegg timely protested the tax adjustment on October 28, 2010. Revenue subsequently conducted a tangible property tax audit for Chegg for the taxable periods January 1, 2009 through December 31, 2010 and reclassified nearly all of Chegg's textbooks as "Inventory" and fully taxed the textbooks accordingly. On February 10, 2011, Chegg received a Notice of Tax Due for its 2010 tax year in the sum of $517,443.87, reflecting adjustments made by Revenue to Chegg's 2010 declared tangible personal property listed as "Goods Stored in Warehouse/Distribution Center." Chegg timely protested the tax adjustment on March 25, 2011. On March 28, 2011, Chegg received an additional Notice of Tax Due for its 2009 tax year in the amount of $199,179.99. Revenue assessed penalties on each of Chegg's Notices. All of the protests were consolidated before the Department of Revenue's Division of Protest Resolution. In October 2012, Revenue issued revised Notices of Tax Due, alleging a total tax due of $947,454.73, plus interest and penalties. Revenue issued a Final Ruling on October 16, 2012, alleging total tax due of $956,228.84.

Chegg appealed Revenue's Final Ruling to the KBTA on November 15, 2012. At the July 23, 2013 hearing before the KBTA, Revenue's main position was that, while Revenue does not dispute that Chegg's textbooks stored at its Bullitt County warehouse are shipped out of the state within six months, Chegg's books return to Kentucky after being shipped out of the state and are thus not being shipped to a permanent or final destination outside of Kentucky. Chegg countered, arguing that KRS 132.097 and KRS 132.099, together or independently, do not require that Chegg's tangible personal property be shipped to a permanent or final destination; rather, the statutes only require that Chegg, the owner, reasonably demonstrate that its personal property will be shipped out-of-state from its warehouse within the next six months.

By final and appealable Order issued January 13, 2014, the KBTA affirmed Revenue's Final Ruling and determined that Chegg is subject to tangible personal property tax for any textbook which was shipped out-of-state within six months but which was thereafter returned to Kentucky. Chegg timely appealed to this Court on February 7, 2014, insisting that the KBTA's Final Order must be reversed because the KBTA failed to apply a plain reading of KRS 132.097 and KRS 132.099.

As indicated, the circuit court reversed. The circuit court's reasoning was in relevant part as follows:

**a. Introduction**

Pursuant to § 172 of the Kentucky Constitution, all property in the Commonwealth is subject to ad valorem taxation unless an exemption provided for in or authorized by the Constitution applies.

KRS Chapter 132 provides for the imposition of certain taxes as well as several exemptions from taxation governing the ownership of tangible personal property in Kentucky. KRS 132.010 governs the assessment of ad valorem taxes on tangible personal property in Kentucky. Pursuant to KRS 132.220(1), all property not exempted from tax must be listed annually on the appropriate property tax return so that an ad valorem tax may be assessed. Kentucky's warehouse/distribution center exemption provided for in KRS 132.097 states that

> [t]here shall be exempt from ad valorem tax for state purposes, personal property placed in a warehouse or distribution center for the purpose of subsequent shipment to an out-of-state destination. Personal property shall be deemed to be held for shipment to an out-of-state destination if the owner can reasonably demonstrate that the personal property will be shipped out of state within the next six (6) months.

KRS 132.099 operates similarly, exempting all tangible personal property from local tax when such property is placed in a distribution center or warehouse for shipment out of the state. [FN]

> [FN] In relevant part, KRS 132.099 provides that
>
> > (2) Personal property placed in a warehouse or distribution center for the purpose of subsequent shipment to an out-of-state destination shall be exempt from the ad valorem tax levied by cities, counties, charter counties, urban-counties, and school districts for tax assessments made on or after January 1, 2002. [...]
> >
> > (5) For the purpose of this section, personal property shall be deemed to be held for shipment to an out-of-state destination if the owner can reasonably demonstrate that the

personal property will be shipped out of state within the next six (6) months.

**b. Chegg's Textbooks Are Exempt From Taxation**

There are no factual issues in dispute. Chegg operates a warehouse facility in Bullitt County. In this warehouse, Chegg stores millions of textbooks which Chegg rents to college students. In predictable cycles that parallel the academic calendars of Chegg's student customers, students rent textbooks for approaching academic semesters, generally in January and August of each year. At the beginning of each semester, Chegg rents out a substantial portion of its inventory, and the books are then generally returned to Chegg for subsequent rental, unless the student customer chooses to buy the textbook from Chegg. Chegg labels its books with barcodes and can track the destination and user of each of its textbooks. Commonly, at the end of a twelve to eighteen month cycle, Chegg ships the books to a third-party seller or wholesale liquidator located outside of Kentucky for final disposition of the textbooks.

Chegg completed a Voluntary Disclosure Agreement for tax years 2009 and 2010 on which it reported the leased books as goods stored in a warehouse or distribution center and claimed the property tax exemptions provided for in KRS 132.097 and KRS 132.099. Chegg does not dispute that the leased books had a taxable situs in Bullitt County, Kentucky on January 1, 2009 and January 1, 2010. Rather, Chegg disputes Revenue's position that Chegg's textbooks must be shipped out-of-state within six months, never to return to Kentucky again.

As stated above, Kentucky's warehouse/distribution center exemption provided for in KRS 132.097 requires the

January 1 personal property owner to make the two following showings: 1) personal property is placed in a warehouse or distribution center and 2) the personal property is stored for subsequent shipment to an out-of-state destination. Personal property is deemed to be stored for subsequent shipment to an out-of-state destination if the personal property owner reasonably demonstrates that the personal property will be shipped out of the state within the next six (6) months. The party claiming an exemption bears the burden to prove that it has met all applicable statutory requirements to claim the exemption. *Epsilon Trading Co., Inc. v. Revenue Cabinet*, 775 S.W.2d 937, 941 (Ky.Ct. App.1989).

Relying on *Reeves v. Island Creek Fuel & Transp. Co.* [313 Ky. 400], 230 S.W.2d 924, 927 (1950), for the proposition that "[t]he idea of permanency, with respect to personal property, seems generally to be, that for such property to acquire a taxable situs, it must have a more or less permanent location as distinguished from a transient or temporary one," the KBTA stated that "[t]he leased textbooks have a 'more or less permanent location' in the Bullitt County warehouse" because the books Chegg leases to its student customers usually return to Chegg's Bullitt County warehouse. K–24470 at pg. 3. The KBTA concluded that "[t]he legislature has made a policy decision, by statute, that when items of tangible property are located in a warehouse or distribution center in this state for six months of the year or less, before they are shipped out-of-state, they should not be subject to property tax for the tax year in question." *Id.* In sum the KBTA held that "the plain and ordinary meaning or understanding of the words 'shipped out-of-state' and 'out-of-state destination,' is that once there has been a delivery to that out-of-state desti-

nation, those goods will not be returned to Kentucky." K–24470 at pg. 4.

When engaging in the exercise of statutory construction, the Kentucky Supreme Court has stated that "we assume that the '[Legislature] meant exactly what it said, and said exactly what it meant.' Only 'when [it] would produce an injustice or ridiculous result' should we ignore the plain meaning of the statute." *Revenue Cabinet v. O'Daniel*, 153 S.W.3d 815, 819 (Ky.2005).

. . .

Because the statute is not ambiguous, the plain meaning of the text controls. This Court believes the requirements of the exemption are quite clear. The exemption does not require the personal property to be sent to a final or permanent destination, just a destination that is outside of Kentucky. The exemption does not require a sale, just that ownership be determined at the appropriate, statutorily determined time. The exemption does not except from its application personal property which is leased or rented. The exemption does not even require that the property owner prove to any high degree of certainty that the property will leave the state, just that the property owner reasonably demonstrate that the property will be shipped outside of Kentucky within the ensuing six months. To require anything other than what the statute says is an error of law. The legislative intent of the statute is even clearer when one considers the taxing landscape in Kentucky. Kentucky is one of only a few states which still impose a tax on personal property in the form of inventory. The statutory exemptions were enacted to reduce the burden of the tangible personal property tax on inventory so as to foster and encourage warehousing in Kentucky to promote economic growth. The exemp-

tions must be construed in a manner that effectuates this legislative intent. Chegg is the owner of the textbooks. Chegg has reasonably demonstrated that it ships its property outside of Kentucky within six months. Revenue is impermissibly reading "final destination" into a statute that only states "destination," and that distinction is not supported by the plain language of the statute. While exemptions from taxation are to be narrowly construed, KRS 132.097 and KRS 132.099 cannot be construed to require more than the plain language utilized by the General Assembly. Chegg has met its burden in establishing all of the requisite elements of the warehouse exemption set forth in KRS 132.097 and KRS 132.099. The KBTA incorrectly determined that Chegg was not entitled to claim the exemption, and Revenue's tax assessments must be set aside.

Upon determining the exemptions specified in KRS 132.097 and 132.099 applied, the circuit court likewise vacated penalties Revenue had assessed Chegg due to Chegg's nonpayment of the aforementioned tangible personal property taxes. The circuit court's resolution of those issues, in turn, mooted additional issues Revenue had raised before the circuit court regarding whether it could enforce collection measures against Chegg during the pendency of the proceedings below.

This appeal followed.

■■■ The rules that apply to our review of this matter are the same rules that applied to the circuit court's review of this matter. As correctly explained by the circuit court,

> [i]n reviewing an agency decision, this Court may only overturn that decision if the agency acted arbitrarily or outside the scope of its authority, if the agency applied an incorrect rule of law or if the decision itself is not supported by sub-

stantial evidence on the record. *See Kentucky State Racing Commission v. Fuller*, 481 S.W.2d 298, 301 (Ky.1972); *see also Kentucky Board of Nursing v. Ward*, 890 S.W.2d 641, 642–43 (Ky.Ct. App.1994). "Judicial review of an administrative agency's action is concerned with the question of arbitrariness." *Commonwealth, Transportation Cabinet v. Cornell*, 796 S.W.2d 591, 594 (Ky.Ct. App.1990), *quoting Am. Beauty Homes Corp. v. Louisville & Jefferson County Planning & Zoning Comm'n*, 379 S.W.2d 450, 456 (Ky.1964). Arbitrariness means "clearly erroneous, and by 'clearly erroneous' we mean unsupported by substantial evidence." *Crouch v. Police Merit Board*, 773 S.W.2d 461, 464 (Ky.1988). Substantial evidence is "evidence of substance and relevant consequence, having the fitness to induce conviction in the minds of reasonable men." *Fuller*, 481 S.W.2d at 308.

If it is determined that the Board's findings are supported by substantial evidence, the next inquiry is whether the agency has correctly applied the law to the facts as found. *Kentucky Unemployment Ins. Comm'n v. Landmark Cmty. Newspapers of Kentucky, Inc.*, 91 S.W.3d 575, 578 (Ky.2002); *quoting Southern Bell Tel. & Tel. Co. v. Kentucky Unemployment Ins. Comm'n*, 437 S.W.2d 775, 778 (Ky.1969). Questions of law arising out of administrative proceedings are fully reviewable *de novo* by the courts. *Aubrey v. Office of Attorney General*, 994 S.W.2d 516, 519 (Ky.Ct. App.1998). When an administrative agency's findings are supported by substantial evidence, and when the agency has applied the correct rule of law, these findings must be accepted by a reviewing court. *Ward*, 890 S.W.2d at 642.

On appeal, Revenue argues that the word "destination" as used in KRS 132.097 and 132.099 is ambiguous; and, as such, it should be construed to mean "final desti-

nation" because (1) tax exemptions are construed narrowly; and because (2) that is the way Revenue understands the word, and an administrative agency's interpretation of a statute must be accorded deference. Thus, it concludes that because the final destination of Chegg's textbooks was not an out-of-state location, Chegg was not entitled to the exemptions described in KRS 132.097 and 132.099, Chegg was subject to the tangible personal property taxes it assessed, and the circuit court accordingly erred in reversing.

■■■ As a general matter, statutes specifying tax exemptions are narrowly construed. *Revenue Cabinet v. Hubbard,* 37 S.W.3d 717, 719 (Ky.2000). An administrative agency's construction of its statutory mandate is also entitled to a certain degree of respect. *Homestead Nursing Home v. Parker,* 86 S.W.3d 424, 426 (Ky. App.1999). Nevertheless, an administrative agency cannot by its own internal policy or other form of action limit the effect of a statute. KRS 13A.130(1)(b). Nor, for that matter, should any construction of a statute—narrow or otherwise—impinge upon the cardinal rule that a statute is to be construed in accordance with its real intent and meaning and not so strictly as to defeat the legislative purpose. *See Pearce v. University of Louisville, by and through its Board of Trustees,* 448 S.W.3d 746, 763 (Ky.2014).

■■ With that said, we agree with and incorporate the circuit court's reasoning and resolution regarding this issue. Revenue's interpretations of KRS 132.097 and 132.099 impermissibly limit the effect of the statutes by adding language of qualification. In the absence of a definition pro-

vided by a statute, words are to be accorded their plain everyday meanings. *See* KRS 446.080(4). Here, the word "destination" is not statutorily defined, but the plain everyday meaning of "destination" is simply—and *unambiguously*—"a place to which one is journeying or to which something is sent." MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 339 (11th ed.2005). The word does not denote or require permanence. Indeed, if *all* destinations were "final," as urged by Revenue, there would be no need to qualify *any* destination—as also urged by Revenue—as a "final destination." And, as noted by the circuit court, neither statute requires a sale, exempts leased or rented property from its purview, or requires a property owner to prove to any high degree of certainty that the property will even leave Kentucky.

In short, Revenue misinterpreted KRS 132.097 and 132.099; and based upon its incorrect interpretation of those statutes, it impermissibly assessed Chegg with the tangible personal property taxes at issue in this matter. Accordingly, the circuit court correctly reversed the Kentucky Board of Tax Appeals. As discussed by the circuit court, Chegg was entitled to the exemptions. We therefore AFFIRM. Our holding likewise moots the additional issues Revenue has raised on appeal regarding whether it could have enforced collection measures against Chegg during the pendency of the circuit court proceedings.

ALL CONCUR.